## Jeremiah Robinson and a. *vs.* Lois Leavitt.

S. L., being seized of certain lands, mortgaged the same, and afterwards married—and died, leaving S. L. and D. R. wife of J. R. and A. L. his heirs at law. His widow was appointed administratrix. J. R., T. S. R. and D. P. procured an assignment of the mortgage, and commenced an action against the widow, as tenant, to recover possession of the mortgaged premises. The estate was administered in the insolvent course, and the administratrix petitioned for license to sell real estate for the payment of the debts. To prevent this, J. R. and S. L. as principals, and T. S. R. and D. P. as sureties, executed to the judge of probate a bond to pay the debts, which the judge accepted, and dismissed the petition. *Held* that the bond operated as a discharge of the mortgage, and that the demandants were not entitled to recover. *Richardson, C. J. dissenting.*

WRIT OF ENTRY for certain lands in Brentwood, which the demandants, J. Robinson, T. S. Robinson and D. Parshley, claimed to recover as assignees of a mortgage made and executed by one Stephen Leavitt to the Trustees of Phillips Exeter Academy, and by them assigned to the demandants.

The case was submitted to the decision of the court upon a statement of facts, by which it appeared that Stephen Leavitt, being seized of the demanded premises, mortgaged the same to the said Trustees on the 3d of September, 1822, to secure the payment of a promissory note.

On the 25th December, 1825, said Stephen married the tenant, and died September 28, 1830, leaving the tenant his widow, and Deborah Robinson, wife of said Jeremiah Robinson, Stephen Leavitt his son, and Abigail Leavitt a grand-daughter, his heirs at law.

On the 15th December, 1830, the tenant was duly appointed administratrix of his estate.

On the 21st of said December, the demandants procured an assignment of said mortgage to themselves, and 25th February, 1831, commenced this action, and now claim to hold the demanded premises by virtue thereof.

The estate was decreed to be administered in the insolvent course, and the note secured by the mortgage was presented to and allowed by the commissioners.

April 11, 1831, the administratrix having made application for license to sell real estate for the payment of the debts, the said Jeremiah Robinson and Stephen Leavitt as principals, and said T. S. Robinson and D. Parshley as sureties, for the purpose of preventing such license, executed to the judge of probate a bond of that date, with a condition that said J. Robinson and S. Leavitt, as heirs of said Stephen Leavitt deceased, should pay, or cause to be paid, all the just debts of the deceased within nine months, which bond the judge accepted and dismissed the petition.

The claims against the estate, as allowed by the commissioners, amounted to $1666 01.

On the settlement of the tenant's account of administration there was found in her hand a balance of $156 59, from the avails of the personal estate, she having paid none of the debts.

The lands described in the mortgage are of greater value than the amount of the note.

Judgment to be rendered for the demandants, or a nonsuit entered, according to the opinion of the court.

*G. Sullivan*, *Cutts*, and *James Sullivan*, for the demandants.

*I. Bartlett* and *Tilton*, for the tenant.

PARKER, J.    This case is of a peculiar character.

The demandants claim the land in question as assignees of a mortgage made by Stephen Leavitt, the intestate, and duly assigned to them.

The tenant is the widow of said Leavitt, and as such entitled to dower in his estate against all persons but those claiming under the mortgage, but having no right to pos-

session against the demandants if the mortgage is in force, because it was executed before the coverture, and having no authority to set up her right of dower at present against any one, no assignment having been made.

She is also administratrix of the estate, and as such, the estate being administered as an insolvent estate, required to keep the estate in repair ; authorized to receive the rents and profits, and holden to account for the net proceeds in her administration account. *N. H. Laws* 370.

How long an administrator is thus authorized to hold possession, the statute does not specify ; but this provision, clearly, cannot enable the tenant successfully to defend a suit upon this mortgage, if the demandants would otherwise have a right to recover.

As administratrix, also, it would be her duty, if she had realized assets sufficient, or by due diligence might have realized such assets, to redeem real estate mortgaged for less than its value in money, or to sell the same by license, subject to the incumbrance ; (*N. H. Laws* 334) but she has made no redemption of this estate, not having received assets sufficient from the personal estate, and having been prevented from obtaining a license to sell, two of those interested in the estate having, in pursuance of another statute provision, given a bond to the judge of probate, and thus defeated her application for license.

But she is in possession, and that is sufficient for the purposes of this defence, unless the demandants can prevail upon their mortgage ; and the only question in the case is, whether this was discharged by operation of law upon the execution of the bond.

The bond is executed by all the demandants ; one of them, J. Robinson, who has an interest in the land in right of his wife, a daughter of the intestate, being a principal, and the other two sureties ; and it is also executed by Stephen Leavitt, a son of the intestate, as a principal obligor.

The tenant contends that this bond to pay the debts is equivalent, on the part of the demandants, to a covenant not to sue, or operates as an estoppel, and that the mortgage is therefore discharged, and she is entitled to make this defence if the facts in the case sustain it.

A covenant not to sue will operate as a release, to avoid circuity, and if the debt due is in judgment of law released, the mortgage will be discharged also. In ejectment by the mortgagee, the defendants may prove by parols, that the mortgage debt is paid, which is a good defence to the action. 1 *Cowen* 122, *Jackson* vs. *Stackhouse.*

Do the facts in this case, then, show a discharge of this mortgage?

The general rule is, that when a party pleads matter, which, in case of a recovery, would entitle him to maintain another suit against the plaintiff, on account of, or by reason of, that recovery, and for the same amount, the matter so plead operates as a discharge of the action, for avoiding circuity.

By the general rule, then, the parties to the first and second suit must be the same; and it must appear that the recovery to be had in the second suit, will be by the defendants against the plaintiff, for the same amount, costs excepted, and that the cause of action in the second suit will arise by reason of the recovery in the first.

This, however, is not a mere arbitrary rule, and to be enforced and abided by merely because it is the rule, without regard to the reason upon which it is predicated. The substantial ground of it is, that the law will not permit a party to recover, when it appears that the only effect of a recovery will be to entitle the other to recover back the amount in another action. In such case the law reaches at once to the termination; and by defeating the first suit leaves the parties, in the first instance, where it perceives they must be left at last, and as the justice of the case

requires they should be left, and thus saves litigation and costs.

In ordinary cases, the rule can only operate where the parties on the record will be the same in both suits. But if a case may occur, in which it is apparent that although the nominal parties will not be the same in the different suits, yet the final result will be, that whatever is recovered must be repaid ; so that in the end the parties, after litigating one or more suits, must come back to the point from which they started ; the reason for the application of the rule is as strong as if the parties on the record were the same. It can be no objection to its adoption in any case, that it will prevent a multiplicity of actions instead of one.

The cases in which the rule can be applied where the parties are not the same will be extremely rare ; but if any such do exist, although they may not be within the precise terms of the rule, they are within its spirit, and the justice of the case may require its application.

It is apparent here that the parties in another suit cannot be, nominally, the same as in this. The bond is not a bond to the tenant ; and if it was to be considered as an instrument *inter partes* merely, and the judge of probate as an individual, the principle could not be applied. 3 *Man. & Sel.* 308, 322, *Storer* vs. *Gordon ;* 3 *Bos. & Pul.* 149, *note.*

But the widow and heirs cannot be considered as strangers to this bond. The beneficial interest is in them and in the creditors. The judge of probate has no interest whatever in it. He is a mere trustee for those interested in the estate. 1 *N. H. R.* 249, *Harris judge* vs. *Davis ;* 3 *N. H. R.* 392, *Gookin judge* vs. *Hoit ;* 5 *Pick.* 62, *Coffin judge* vs. *Jones ;* 8 *Pick.* 342, *Barrett* vs. *Barrett ;* 13 *Mass.* 368, *Paine judge* vs. *Gill ;* 16 *Mass.* 527, *Robbins judge* vs. *Hayward.*

In a suit upon the bond, although in the name of " the judge of probate," and although judgment must be rendered for him, *eo nomine,* execution will issue for the benefit of

those interested. If money is collected upon such execution, it will be their money ;—if the execution is levied upon real estate, the title will vest in them by the statute. —*N. H. Laws* 372 ; 6 *N. H. Rep.* 260.

Under such circumstances, it would be disregarding its spirit to hold that the rule could not be applied, because a suit upon the bond must be in the official name of such a trustee, when if a suit is had upon it, by reason of the recovery in this case, such suit will be to all intents and purposes the suit of those interested in the estate.

Again—the bond may, and does cover much more than any interest of the widow and heirs in this suit. A judgment upon it must be for the whole penalty, and that judgment will enure for the benefit of all the creditors against the estate ; for the condition is to pay all the debts.

But this judgment for the penalty is merely a formal one. No execution issues for the penalty. It is a mere mode of enforcing the rights of those interested, and those rights are enforced by separate executions. Any execution which might issue for the benefit of the creditors, on account of the non-payment of their several claims, would be as entirely distinct from those issued for the benefit of the widow or heirs, on account of a recovery in this suit, as if they had issued in a different suit. This then can form no substantial objection.

Again—the tenant is sole defendant, and others may perhaps be interested in a suit upon the bond, on account of the non payment of this debt, if the action is sustained.

But it can form no valid objection, that in a suit upon the bond there may possibly be several executions, for the benefit of the several persons interested, if the aggregate amount of those executions will be the amount of the debt which the demandants claim.

There is still another circumstance. Stephen Leavitt, one of the obligors, is not a party to this suit. He will take no benefit from a recovery in this case, whether the mortgage

money is paid, or the mortgage is foreclosed ; but in a suit <span>Robinson et al.<br>vs.<br>Leavitt.</span> upon the bond he may be a party, as well as the demandants, and be liable to pay the judgment.

The rule, however, that the parties to the different instruments must be the same, we have seen may admit of an exception where one party is a mere official trustee, and there is authority to carry us still farther.

Where A. and B. gave a sealed note to C., and A. afterwards gave a bond and mortgage to C. for the amount due on the note, and C. covenanted to procure and cancel the note, it was held, that although the bond and mortgage were not an extinguishment of the note, yet the covenant made with A. was a covenant for the benefit of A. and B., and a covenant not to sue, which amounted to a release of the note. 8 *Johns.* 54, (2d ed. 43) *Phelps* vs. *Johnson. Recognized* 4 *Wendell* 612.

So where two executed a bond, by which they bound themselves not to institute any suit against the obligee, unless on a future contract, either as partners or separately, it was held to amount to a release of a cause of action in favor of one. 2 *Johns. R.* 186, *Cuyler* vs. *Cuyler.*

In order, then, to see how far the circumstance that Stephen Leavitt is no party here should prevent us from applying the rule, it will be proper to consider the effect of a recovery in this case, and then the operation of a recovery upon the bond.

And it may be well also to notice the suggestion, that it would be unjust to hold this bond as a release, on account of the operation it would have upon the parties.

It may be that by giving it this effect the two principal obligors will be placed in a worse situation than they would have been had they suffered the administratrix to sell, and the widow and grand-daughter may possibly be benefitted, without contributing their shares towards the removal of the mortgage.

It is true, that had the administration proceeded in the usual course, the widow could not have been endowed, as against the mortgagees or assignees, without at least contributing to the redemption of the mortgage in proportion to her interest ; and in case she had, as administratrix, sold land for the payment of the amount, she could probably have been endowed only of the residue of the estate remaining after the sale.

To that extent she would have been entitled, for being dowable as against all the world except those claiming under the mortgage ; when she had sold a portion of the estate, by license, and discharged the debt, neither the other creditors nor heirs could have objected to her being endowed of the residue. 5 *Johns. C. R.* 452, 457, *Titus* vs. *Neilson.*

If the administratrix had obtained license, and sold real estate sufficient to pay all the debts, Abigail Leavitt, the grand-daughter, would have been entitled only to a distributive share of the remainder.

It is possible, if the mortgage is held discharged, and the demandants cannot recover, that the widow may take her dower in the whole real estate, and that Abigail Leavitt will, as heir, take one third, subject only to the incumbrance of the dower ; and that they may both be benefitted by these proceedings, without having to bear a proportionate share of the burden, as they must have done in the usual course of administration.

This however may not be the case ; and if such is the result, it is not in consequence of an unjust rule of law, but of the unadvised interference and acts of the demandants themselves. It is true that this interference was one authorized by law. The demandants had a perfect right to prevent the sale. No one can complain of it. But, having voluntarily exercised this right, they must perform their obligation. They have undertaken to pay and discharge the debts, and we cannot absolve them from this stipulation.

If third persons derive a benefit from their acts, we cannot for that reason give to their bond a different construction from that which it would otherwise receive. The language is express, that they undertake that the debts shall be paid.

Whether we give effect to this obligation, so far as the mortgage is concerned, in this action, by holding that the bond operates as an estoppel, or release, for avoiding circuity of action, or whether we permit the demandants to recover now, and put the other parties interested in the bond to their action, the result must be the same if the premises are redeemed,—or rather, it is most beneficial to all parties that the former mode should be adopted, inasmuch as it will save costs.

Should the demandants recover, the widow, and granddaughter, and even Stephen Leavitt the son, must either redeem the land, as they unquestionably would have a right to do, or the mortgage will be foreclosed, and the whole real estate taken.

Should the widow or granddaughter buy, and the estate be redeemed, the one who paid would seem to be entitled to maintain an action upon the bond, in the name of the judge of probate, in which a recovery must be had for the amount thus paid for the redemption. The mortgage money is a debt due from the estate. The condition of the bond provides for the payment of that, among the other debts ; and the damages, upon a hearing in chancery, for its nonpayment, must be the amount paid to redeem the mortgage.

Again—upon the supposition that the money is paid, and the estate redeemed, let us examine the operation of a suit upon the bond among the obligors themselves.

The debt will have been paid to them, and a recovery of the amount would be had against the four. Should this be collected of the demandants, in equal proportions, as it might be, the obligors would then stand in the same situation as

to each other, that they will do if it is now held that the bond operated to discharge the debt, with the exception of an accumulation of costs. They must in such case be left to seek their remedy for contribution, on account of the payment made, as they will have to do in case the bond operates to discharge the debt.

Should the amount be collected of a single obligor, he must have his remedy against the others for a recovery of their shares, so that in the end the same result will be produced.

J. Robinson and S. Leavitt, as principals, have, in my opinion, clearly undertaken the payment of this, it being one of the debts, and the other demandants have entered into the same stipulation as sureties. The principals must make it good, whether the bond operates as a release of it, or whether the amount is collected of the obligors in a suit to recover damages for the nonperformance.

Again—Stephen Leavitt is a son of the intestate—interested, therefore, in the redemption of this mortgage, but having no interest in the debt.

If judgment should be rendered for the demandants, he, as heir, would be entitled to redeem. As co-obligor he would have a right to pay the debt, as he had undertaken to do. Should he do so he must have a claim upon his co-principal, J. Robinson, for one half of the money paid, and hold his right in the estate, which will leave him in just the same situation as if the widow or grand-daughter redeemed, and Robinson and himself were compelled, in a suit on the bond, to refund the amount thus paid upon the redemption.

It is apparent, then, that in case of a redemption, by whomsoever it may be made, the parties must be left in the end as they will be in case the bond operates as a release— that is, the debt must be paid at last by J. Robinson and S. Leavitt.

In case of a foreclosure, it is true the situation of the parties might be somewhat different. The widow and

grand-daughter, it would seem, must in that case be entitled to recover what they had lost by reason of the nonpayment of the debt.

Whether the fact that S. Leavitt is a party to the bond would not prove an obstacle to his having a suit upon it, to recover damages for a neglect in which he participated, need not now be considered.

Some novel proceedings, to which it is unnecessary to advert more particularly, must certainly be presented should he, in such case, attempt to enforce a remedy on the bond itself. It must be better for him to be held to the payment of one half the debt in the first instance, and to be entitled to his share in the estate, than to attempt to recover damages against Robinson and himself for the nonpayment of it.

Neither would a foreclosure be for the interest of J. Robinson, if Leavitt could have any remedy, as may easily be seen by tracing out the consequences.

I have considered this as a bond for the payment of the debts; and I see not how it can be regarded as a bond of indemnity, leaving the rights of the creditors against the administratrix unchanged, and providing that she shall be saved harmless if compelled to pay.

The bond, in terms, stipulates that the obligors shall pay the demands against the estate; and such must necessarily have been a part of the condition, otherwise the judge of probate would not have been justified in receiving it, and dismissing the application of the administratrix for license to sell.

The statute of July 2, 1822, *N. H. Laws* 365, passed upon a revision of the probate laws, empowers the judge of probate, in default of personal estate to answer the just demands against the estate of any person deceased, to license the executor or administrator to sell real estate at public auction; but it contains a proviso that the heirs and devisees shall be notified of the application for such license, " and if they will give bond, with sufficient sureties, for the

"payment of said demands, and to save harmless the execu-
"tor or administrator therefrom, no such license shall be
"granted."

It was under this clause of the statute that this bond was
taken; and it is of course a bond to pay all the demands against
the estate, as well as to save the administratrix harmless.

It seems to us, then, that the creditors have a direct inter-
est in this bond, and that, if their debts are not paid, they
may apply to the judge of probate and have a suit instituted
upon it for the recovery of their demands; and it is at least
very questionable, in my view, whether they have any other
remedy.

This bond bears a strong analogy to a bond given by an
executor, who is residuary legatee, to pay the debts and
legacies.

In such case the residuary legatee, who is entitled to the
remainder of the estate after the debts and legacies are paid,
may give bonds for their payment, and then is not obliged
to proceed and dispose of the estate for that purpose.

And where, the personal estate being insufficient, the ad-
ministrator applies for license to sell real estate, the heirs
who are entitled to that estate, subject to the just demands
against it, may, by our laws, give bond to pay those demands,
and then the real estate is not to be sold for the purpose of
making payment.

In both cases the terms of the condition are very similar,
and the rights to be secured are of a similar character.

Can there be any question but that the creditors of an
estate have a direct interest in a bond given by an exe-
cutor who is residuary legatee, so that they are entitled to
have it put in suit for the recovery of their debts?

In Massachusetts, where, as in this State, such bond may
be given, by statute, the court say—"The legislature has
"made such bond a substitute for the estate of the deceased,
"so that there is no longer any lien upon the real or personal
"estate of the testator, by his creditors, after the executor

"shall have conveyed the same to *bona fide* purchasers. "Whether such creditor, having obtained judgment and "execution against an executor who has given such bond, "can levy upon the estate devised, before any conveyance "of it, may be matter of enquiry in some future action." 5 *Pick.* 340, *Clark* vs. *Tufts.* And again in the same case : "It is sufficient for the creditor that the law has provided "for him a sufficient fund, out of which, with reasonable "diligence, he may obtain satisfaction." So in 16 *Mass.* 179—"The bond so given is the security intended by the "statute for the creditors and legatees." Vide also 4 *Pick.* 97, *Stebbins* vs. *Smith.*

If a bond by a residuary legatee is a substitute for the estate of the deceased—a sufficient fund provided for the creditors out of which to obtain satisfaction—why is not a bond by the heirs, in the case provided for by our statute, equally a substitute, and a fund, to which the creditors may resort without an intervention of the administrator ? There is surely no limitation in its terms to prevent it. The bond in this case was not given to the administratrix, but to the judge of probate, and I think rightly so ; and the creditors may as well resort to it as to an administration bond, where their rights require it. Any person aggrieved by the breach of the condition of any bond given to a judge of probate may have an order for a suit upon it. *N. H. Laws* 371 ; 13 *Mass.* 365, *Paine judge* vs. *Gill.*

In the case of a bond by an executor, who is residuary legatee, there is no possibility of construing it as a bond to indemnify the executor, for he is the principal obligor ; and in the other case, although the same difficulty does not exist, others which seem to be equally insuperable, present themselves.

Where an intestate estate is administered upon as if solvent, and, the personal estate being insufficient to pay the debts, upon application for license to sell real estate, a bond is given by the heirs, there would be no difficulty, perhaps,

in permitting the creditors, if their debts were not paid, to call upon the administrator to apply the amount of the personal estate in his hands in satisfaction of their claims, as far as it would go ; and, by means of a judgment against the administrator, to levy on the real estate of the intestate, and thus obtain satisfaction.

It was formerly decided in Massachusetts that creditors may so levy where a bond has been given by a residuary legatee to pay debts and legacies, and that any remedy on the bond was cumulative. 3 *Mass.* 523, *Gore* vs. *Brazier ;* 4 *Mass.* 150, *Wyman* vs. *Brigden.* How far those decisions will be confirmed, since the court there have held that the giving of such bond vests in the residuary devisee an indefeasible title to the estate devised, seems expressly reserved for farther enquiry. 5 *Pick.* 340.

But suppose the creditors may levy after such bond by the heirs, how is the administrator damnified ? He can in no case be damnified personally, because not personally liable. And in his official capacity, the personal estate in his hands was to be paid out to some one, and it is immaterial to him as administrator to whom he pays it—whether to the creditors, or to those interested in the distribution. As to the real estate—after the bond is given he is not bound farther to intermeddle with that, and is not injured by its being taken.

The creditors who have been obliged to take land, instead of money which it was stipulated they should receive ; and possibly the heirs, if any, who have not united in the bond, may be damnified ; but what suit could be sustained in such case on a bond to indemnify the administrator ?

The difficulties, however, are still greater in an estate administered as an insolvent estate, and such bond may be given in that case.

There the statute provides for an allowance of the claims against the estate by commissioners, and for a dividend to the creditors to the amount of their claims, if so much can

be realized, by a decree of the judge of probate, and enacts that no action shall be sustained against the executor or administrator, except in certain cases there provided for—such as appeals from the determination of the commissioners, and actions of review, in which cases the amount recovered is to be added to the list of claims.

A license to the administrator to sell real estate may be prevented by a bond from the heirs, as in other cases.

This estate is administered in that course. The debts amount to $1666 01. The administratrix has in her hands $156 59 derived from the personal estate.

If this is a mere bond of indemnity to the administratrix, and the obligors neglect to pay the debts, how are the other creditors to obtain satisfaction of their demands which the administratrix has not paid, and cannot pay for want of assets?

As a bond of indemnity to her, she can maintain no action until damnified.

How can the creditors proceed against her? Not personally. It can only be by enforcing such duties as devolve upon her as administratrix. She can be liable no farther than she may have, or ought to have, assets.

If the personal estate is still liable it will pay but a small portion,—and how are the creditors to obtain a remedy for the remainder? How are they to levy on the real estate? The statute respecting estates administered as insolvent makes no provision for judgment, execution or levy. If it could be done, how would it damnify the administratrix?

It cannot be supposed that the legislature intended that the administratrix should be left liable to be proceeded against by the creditors in the same manner as if she had sold the real estate and realized from the sale sufficient to pay the debts—that the bond is to be treated as money in her hands, and she compelled to pay the debts without means provided, and obliged to resort to the bond for her indemnity.

It may then well admit of question whether the statute has not, upon such bond being given, changed the whole course of the creditors' remedy for the recovery of their demands, so that, instead of proceeding by means of the administratrix, and against her if she neglects her duty, they must, after the execution of the bond, resort to that as the fund out of which they are to obtain satisfaction for all their claims beyond a dividend from the avails of the personal estate in her hands, if not for the entire demands against the estate.

But it is unnecessary to discuss this matter farther at this time.

If the creditors must rely upon the bond alone, although the defendant as administratrix might be said in one sense to be a stranger to the bond, because she could not recover any thing for a breach of the condition, yet she must have a right in any proceeding against her involving the existence of a debt against the estate to contend that it is released or extinguished.

And if it be supposed that the administratrix is still liable for the debts—if the creditors may in any way proceed against her, and she then avail herself of this bond for her indemnity, she has a direct interest in it in her official capacity ; and it must have precisely the same operation in barring a debt of the obligors as a bond to pay the debts.

It would in such case be, in effect, a bond to save the estate harmless, and be equivalent, in its operation, to a bond given to the intestate, in his lifetime, to save him harmless from his debts.

Such bond would operate as a release of any debt due the obligors.

A bond or covenant by the creditor to save harmless and indemnify the debtor against the debt, operates as a release of the debt. 3 *Cowen* 152, *Clark* vs. *Bush ;* 2 *Salk.* 573, *Clayton* vs. *Kynaston ; Bac. Abr. Release A* 2.

If then this bond had been to Stephen Leavitt deceased

and to save him harmless against all his debts, the obligors at the time holding the mortgage debt, it would have been a release of the debt ; and if the bond be to save the estate harmless, may not the administratrix make precisely the same use of it, and will it not be as effectual ?   Clearly so, because if a recovery is had, and she pays the money, she may have a suit on the bond, and recover it back again.

Robinson et a.
*vs.*
Leavitt.

It would be sufficient, then, to authorize us to apply the principle of release and estoppel for avoiding of circuity of action, that the bond, although nominally to the judge of probate, is in its effect a bond to those interested in the estate ; and although the parties now before the court are not precisely the same they would be in another suit or suits, yet in case of a redemption of the mortgage, which it is clearly the interest of some of those interested to effect, and which therefore it may be presumed would be in some way accomplished, the result to be attained, through one or more suits, must be that the principal obligors must pay the mortgage money to the assignees of the mortgage ; and by holding the mortgage debt released and discharged, the same result is attained at once.

Such being the case, it could be no substantial objection that the parties in another suit would not be precisely the same, nor that these proceedings, by means of a foreclosure, might have such a termination that the result would not be the same as between the principal obligors—a termination which upon any view of the rights and liabilities of the parties must work injury to some one, and which no one ought to desire to have accomplished.   There is, however, another mode of considering this case, and upon other authorities, with precisely the same result.

It is evident from the examination which has been made, that if the demandants recover it will be only to subject themselves, by means of the bond, to refund, and then

Robinson et a.
vs.
Leavitt.

adjust the amount between themselves. No principle of justice therefore requires a recovery.

The demandants all became bound for the payment of the debts of the intestate. It is not a mere covenant not to sue, or a bond to save harmless, even if it might have that operation.

There was at the time a debt due to themselves. How could they make payment to themselves?

There was no necessity of the formality of passing money in such case to effect a payment. 11 *Mass.* 269. The debt was due to them jointly—the obligation to pay was upon all jointly. There was nothing to do, then, but to adjust the matter among the obligors.

The debt was discharged and extinguished by this undertaking of the obligors to pay. It thereby, as between the estate and the obligors, became their debt. 2 *N. H. Rep.* 460, *Watts* vs. *Welman;* 3 *Vermont Rep.* 561, *Harvey* vs. *Hurlburt.* The very act of binding themselves to pay a debt to themselves must operate to extinguish the claim. The same hand is to receive and pay, and nothing farther is necessary to complete the payment. 1 *Salk.* 305.

Where an executor or administrator has given bond for the faithful execution of his trust, he must be considered as having paid and received, for the purposes of his trust, a debt due from himself, so that he in his official capacity and his sureties will be responsible for such debt. 11 *Mass. R.* 266, *Stevens* vs. *Gaylord;* 12 *Mass.* 199, *Winship* vs. *Bass;* 1 *Salk.* 299, *Wankford* vs. *Wankford.*

Samuel Tarbell, senior, made a note payable to Samuel Tarbell, junior, or order, and died, having made his will, in which Samuel Tarbell, junior, was appointed executor and made residuary legatee. Samuel Tarbell, jr. gave a bond to pay the debts and legacies, and afterwards, being indebted to one Whiting, endorsed to him the note. On this state of facts the court said—" As soon as the executor had given " bonds to the judge of probate to pay the debts and legacies,

"all the estate of the testator, not specifically devised to "others, vested in the executor absolutely. And all the "debts of the testator became, in fact, the debts of the "executor, who thus becoming at the same time both debtor "and creditor with respect to the note given him by the "testator, the note must be considered in law as discharged "and the debt extinct. It is very clear that the note, thus "becoming satisfied and discharged, could not afterwards "be negotiated." 5 *N. H. Rep.* 63, *Tarbell* vs. *Whiting*.

So these demandants having given bond to pay the debts, are, as to this debt, both creditors and debtors, and the case comes directly within the principle of *Tarbell* vs. *Whiting*.

It can make no difference that another is bound with them. They are all bound for its payment. In 2 *Johns.* 186, *Cuyler* vs. *Cuyler*, the demand was in favor of one, and the bond not to sue executed by two, but it operated as a release.

The bond here is, so far as creditors are concerned, in effect a bond to the several creditors; and it may avail also to others injured by a breach of the condition. Suppose that, instead of this, several bonds had been taken to the creditors interested in each debt, to pay their debts. Could these three demandants have maintained an action against themselves and S. Leavitt upon the bond given to them to pay their debt?

These demandants, then, having all become obligated to pay the debts of the intestate, must be held thereby to have discharged their own debt. Two of them being only sureties in the bond which operated to pay the debt, may have a remedy to recover the amount due them of their principals, upon an implied assumpsit that in consideration they, at the request of their principals, would and did discharge their debt against the estate the principals, undertook to pay their several shares of the demand. The law holding the debt discharged will imply the promise, and the principals must be liable as between themselves, so that they will con-

tribute equally in the payment of the whole money which was secured by the mortgage.

I might stop here, but there is, unfortunately, a difference of opinion among the members of the court, which leads to a farther examination.

It has been conceded in the course of the discussion that the demandants could not, after the execution of the bond, proceed against the administratrix for the recovery of the debt—and this it seems to me must settle this case. A note was originally taken for the security of the debt. In the lifetime of the intestate a suit might have been commenced upon it to recover the money. After his death, the estate being in fact solvent, by proper proceedings the administratrix might have been compelled to pay without a resort to the mortgage. If the demandants cannot proceed for the recovery of the money, it must be because the debt is discharged—because the bond operates as a release, or estoppel, or in some way bars them from an action or other appropriate proceeding against the administratrix.

But if these demandants are barred, by the bond, from the recovery of the debt for that reason, the mortgage is discharged. Such bar is equivalent to a payment or release. This must be the operation, otherwise there could be no objection to a proceeding in due course for the recovery of the debt. It was once due to the demandants. It is still due to them unless discharged by operation of law by reason of their act in executing the bond; and if so discharged the mortgage necessarily goes with it. There is no valid reason for upholding the mortgage in their hands afterward.

Payment of the debt discharges the mortgage, whether paid before or after the day. 5 *N. H. Rep.* 431, *Southerin* vs. *Mendum;* 18 *Johns.* 114, *Jackson* vs. *Crafts;* 2 *Har. & McHen.* 17 ; *Morgan's lessee* vs. *Davis ;* 3 *ditto* 399, *Paxon's lessee* vs. *Paul;* 11 *Johns.* 538, *Runyan* vs. *Misereau.*

A release of the debt has the same operation. 2 *Gall.* 155, *Hatch* vs. *White;* 1 *Cowen* 122, *Jackson* vs. *Stackhouse.*

This consequence necessarily follows from the adoption of the rule that the debt is the principal and the land the incident.

It has been so held in equity from which the rule has been adopted by the courts of law. " Whenever the debt " was discharged, the interest of the mortgage and all deri- " vative and incidental interests dependant thereupon in the " land determined of course." *Powell on Mortgages* 109.

And a similar rule it is said prevails in the civil law. " There the debt intended to be secured is considered the " principal, and the securities are considered as adjuncts de- " pending for their existence on the existence of the debt. " The consequence is, that when the debt is discharged, the " securities, and all the estates, interests, liens and charges " created by them are extinguished ; or, to use the language " of the civil law, are confounded, and from that time have " no legal existence." *Coventry, Powell* 109, *note D*.

Even the tender of the mortgage money after the day, and bringing it into court, discharges the land, and the mortgagor may in such case sustain a suit at law to recover the land, because the mortgage is then utterly void. 1 *N. H. Rep.* 332, *Swett* vs. *Horn ;* 6 *N. H. Rep.* 156, *Bailey* vs. *Metcalf ;* 18 *Johns.* 110, *Jackson* vs. *Crafts ;* 5 *Wendell* 578, *Jackson* vs. *Campbell.* Held otherwise in Massachusetts—5 *Pick.* 240, *Maynard* vs. *Hunt.*

If the mortgagor may recover the land in a writ of entry, where the debt is extinguished, or barred, or tendered, for the reason that in such case the mortgage is utterly void, the conclusion is inevitable that the mortgagee, after the payment or extinguishment of the debt, cannot maintain a suit upon the mortgage for the recovery of the land.

There are some cases which hold that the mortgagee may maintain ejectment, after the payment of the debt, on the ground that he is still the owner of the legal estate, and that the mortgagor must be put to his bill in equity. 2 *Day's Rep.* 151, *Phelps* vs. *Sage.* If such doctrine is not

now entirely exploded, it is apparent that it cannot be authority here, and this case has not been supported in the argument upon any such ground.

Again—these demandants claim solely as assignees of the mortgage. If they recover it must be in that character. The mortgage cannot come in aid of any other title. This proceeding, if effectual, may result in the recovery of the debt. It is nominally an action for the recovery of the land, and the land will be recovered if the debt is not paid. But if the demandants prevail judgment is not entered for the land absolutely, but conditionally, that if the mortgagor, &c. shall pay such sum as the court shall adjudge due, within two montns, with interest, then the judgment shall be void, otherwise that the demandants shall have a writ of possession.

What sum due and to be paid? The very money which it is admitted cannot be recovered by a direct proceeding, because a recovery of it is barred by the bond.

If the debt is discharged so that these demandants ought not jointly to recover it, we cannot render such a judgment. 11 *Pick.* 289, *Wade* vs. *Howard ;* 3 *Mason* 524, *Gray* vs. *Jenks ;* 2 *Green.* 322, *Vose* vs. *Handy.*

Actions upon mortgages are ordinarily spoken of in the books as one of the remedies to enforce the payment of the money. 1 *Pick.* 89; *Powell* 966. It is always so understood. It is said that " the interest of the mortgagee is not " in fact real estate, but a personal chattel, a mere security " for the debt, an interest in the land inseparable from the " debt, an incident to the debt, which cannot be detached " from the principal." 5 *N. H. Rep.* 430.

If this suit is supported the debt must be paid. If not paid in currency it will be by the land which is of greater value. But to hold that the payment of the money, which was confessedly once due, cannot be any longer enforced by a direct proceeding against the administratrix, by reason that the bond operates as a bar, but may be enforced by a suit

on the mortgage, and the land obtained in satisfaction of it, will, it seems to me, be giving an operation to the obligation not found in its terms, or warranted by any ordinary rule of construction; and it would also be unjust to others interested in the estate.

It is, however, suggested that the demandants, notwithstanding they cannot proceed for the money, have a right to treat the mortgage as subsisting, and hold the land against the widow and heirs until they contribute their shares towards the redemption of it.

There is a class of cases where a covenant by a mortgagee not to sue, and even a receipt acknowledging satisfaction of the mortgage debt, or the cancelling of the security, has been held not to operate as a discharge of the mortgage. But in these cases the transaction was, by the agreement of the parties, expressly intended as a confirmation of the title under the mortgage, and the justice of the case required that the mortgage title should be sustained, the land alone having by agreement been taken for the debt, and unless the mortgage was upheld no satisfaction had been received.

Thus where A. and his wife executed a mortgage in fee of the land of the wife, and A. afterwards granted and released the premises to the mortgagee, his heirs and assigns forever, and the mortgagee retained the mortgage in his hands, and made an endorsement thereon, by which he covenanted not to bring any action against A. or his representatives for the money due on the mortgage, and declaring that the mortgage was kept on foot merely to protect the title of the mortgagee, it was held that the covenant endorsed on the mortgage was no satisfaction or discharge of it. 8 *Johns. R.* 129, (2d ed.) *Denn* vs. *Wynkoop*.

So a receipt acknowledging satisfaction of the debt will not operate to discharge a mortgage where it was given on an assignment of the equity of redemption; and the confirmation of the title under the mortgage was the satisfaction received. 11 *Mass.* 125, *Perkins* vs. *Pitts*.

So an agreement between the mortgagor and mortgagee that the latter should hold the lands mortgaged in full satisfaction of the debt for which the lands were pledged, cannot be considered as discharging the mortgage and paying the debt at the same time. 3 *Vermont Rep.* 26, 42, *Catlin* vs. *Washburn;* 6 *Conn. Rep.* 373, *Lockwood* vs. *Sturdevant.*

Where the mortgagor has by deed conveyed his equity of redemption to the mortgagee in satisfaction of the note described in the condition of the mortgage, the mortgage becomes an absolute title, and is not merged in the conveyance of the equity of redemption, if such merger would operate to the injury of the mortgagee. 5 *Vermont Rep.* 254, *Marshall* vs. *Wood ; vide also* 1 *Chipman's Rep.* 448, *Myers* vs. *Brownell.*

And where the mortgagor, there being two mortgages, released the equity of redemption to the first mortgagee, who in consideration thereof gave up the notes against the mortgagor, it was held that the second mortgagee was not entitled to foreclose the first without paying off the first encumbrance. 2 *Conn. Rep.* 161, *Baldwin* vs. *Norton.*

In this last case, Swift, C. J. said—" The operation of " this transaction is merely the taking of the pledge for the " debt. This could not discharge the land from the lien ; " for it would be equally inconsistent and inequitable to say, " that the taking of the pledge for the debt, should exone- " rate the pledge from the debt."   " A court of equity then " will consider the taking of the mortgaged premises for the " debt and relinquishing the legal remedy, as no discharge " of the lien ; but the debt remains an incumbrance on the " land against all subsequent mortgages—otherwise the most " manifest injustice may be done ; for if the land be only of " the value of the first debt, then the first mortgagee would " lose his whole debt."

In this class of cases the transactions were generally such between the parties, that if effectual, and no rights of third

persons intervened, the title to the land would have thereby become absolute in the mortgagee, and the land itself and that only have been received in lieu of the debt ; and for the purpose of protecting the interest of the party, and enforcing the justice of the case, the mortgage might well be held to subsist, notwithstanding the evidence of the debt had been cancelled, and no action upon it could be sustained against the mortgagor. If the mortgagee could not hold the land otherwise than by the mortgage, the debt was not satisfied ; and if the debt remained, the mortgage was still subsisting.

The mortgagee therefore must necessarily hold the land until the money was paid ; either by virtue of the contract which gave him the land for the debt, or by virtue of the debt still subsisting and upholding the mortgage.

In 6 *Conn.* 388, it was said it was not disputed that the release from the mortgagor to the mortgagee of the mortgaged premises, and the delivery up of the note described in the condition of the mortgage deed, extinguished the debt. But if it was not disputed in that case it may well be doubted. Delivering up the evidence of the debt does not always extinguish it. And in such cases it may well remain for the purpose of sustaining the mortgage as against subsequent mortgagees, or any persons who ought not to recover the land until they have paid it, and even against the grantor himself, if the release was inoperative, and the transaction which was intended as a payment of the debt failed in its effect.

Debts in many instances subsist and may be recovered where the evidence of them originally taken has been cancelled ; and it seems to me that the true ground in this class of cases is, that the debt, even if discharged so that an action could not be sustained against the original promissor, still subsists in the nature of a charge or lien upon the land, and upholds the mortgage title as against any one who ought

not in justice to take the land from the mortgagee without paying the money.

But this case is not within that class, and the debt ought not to subsist for the purpose of upholding the mortgage in the hands of these demandants.

Here was no agreement to take the land in satisfaction of the debt—no supposed consideration for giving the bond, which has since failed, so that the demandants are without remedy in case the mortgage is held discharged—no mistake requiring the interposition of any equitable principle to enforce the justice of the case—no assent that the demandants' title under the mortgage should be confirmed.

If there was any intention to confirm the title under the mortgage, it existed only with the demandants themselves, and had its origin in an attempt to get the whole land. If there was any mistake, it may have been in supposing that by giving the bond and preventing the administratrix from selling sufficient land to pay the debts, they could more securely proceed to foreclose all interested; and this will furnish no equitable ground for holding that the debt still subsists, and remains a charge upon the land in their favor.

The debt ought not so to subsist, because it is one which the demandants undertook to pay, and they ought not in equity to have it charged as a lien upon the land after undertaking themselves to discharge it, and where, if it is so charged and paid it will only be to make them answerable for the amount on their bond. If barred as to any one, it is, in the hands of these demandants, barred as to every one, and they cannot proceed jointly in any way for its recovery.

Again—it ought not to remain a charge upon the land in their favor, because it would be unjust to the other parties interested in the estate. If held discharged, J. Robinson and S. Leavitt, the principals in the bond, will have, as heirs, the interest in the estate, to protect which it must be presumed they were induced to undertake to pay the debts;

and T. S. Robinson and Parshley may recover of them their proportion of what was due.

If it is suffered to remain, after the attempt of the administratrix to sell a portion and pay, it will be unjust to the widow, who cannot redeem her share without raising the whole money, and paying a debt which these demandants bound themselves to pay—unjust to the grand-daughter, for the same reason—and perhaps even to S. Leavitt himself, one of the obligors, who in that case might lose all his interest in the land,—the very interest which induced him to become a party to the obligation,—and be liable still to pay half of all the rest of the debts.

On the other hand, T. S. Robinson and Parshley will have no cause of complaint if the mortgage is held discharged. If it may be supposed they did not contemplate that the bond would deprive them of any farther benefit from the mortgage, and leave them to the responsibility of J. Robinson and S. Leavitt for the payment of their shares of the debt, it will not be the first time that a contract has imposed upon a party liabilities and subjected him to consequences he did not anticipate ; and moreover, they have still the same security they would have to recover whatever they might be compelled to pay in a suit on the bond. They must in such case look to their principals, and may as well look to them for the debt as for the damages.

There are cases also in which a party who has paid money due upon a mortgage is entitled, for the purpose of effecting the substantial justice of the case, to be substituted in the place of the incumbrancer, and treated as the assignee of the mortgage, and is enabled to hold the land as if assignee, notwithstanding the mortgage itself has been cancelled, and the debt discharged. 1 *N. H. R.* 167, *Marsh* vs. *Rice ;* 5 *Peters' S. C. R.* 481, *Peltz* vs. *Clarke ;* 2 *Johns. C. R.* 503, *case of Coster ;* 4 *ditto* 370, *Silver Lake Bank* vs. *North ;* 2 *Cowen* 118, *Dale* vs. *McEvers ; Powell on Mortgages,* 315, *a.*

The true principle, I apprehend, is, that where money due on a mortgage is paid, it shall operate as a discharge of the mortgage, or in the nature of an assignment of it, substituting him who pays in the place of the mortgagee, as may best serve the purposes of justice, and the just intent of the parties. 6 *Johns. C. R.* 395, *Starr* vs. *Ellis.*

Many cases state the rule in equity to be, that the encumbrance shall be kept on foot, or considered extinguished, or merged, according to the intent, or the interest of the party paying the money; but the decisions themselves it is believed will generally be found in accordance with the principle above stated. 3 *Johns. C. R.* 53, *Gardner* vs. *Astor;* 6 *ditto* 425, *James* vs. *Johnson & Morey;* 2 *Cowen* 246, *S. C. in error; 5 Johns. C. R.* 41, *Burnet* vs. *Denniston; ditto* 220, *Mills* vs. *Comstock;* 3 *Green.* 260, *Freeman* vs. *Paul;* 7 *Green.* 377, *Thompson* vs. *Chandler;* 3 *Vermont Rep.* 561, *Harvey* vs. *Hurlburt;* 5 *ditto* 250, *Marshall* vs. *Wood;* 6 *Conn.* 374, *Lockwood* vs. *Sturdevant;* 1 *Ves. sen'r,* 258, *Kirkham* vs. *Smith;* 1 *Ves. jr.* 233, *Shrewsbury* vs. *Shrewsbury;* 2 *ditto* 264, *Lord Compton* vs. *Oxenden;* 18 *ditto* 384, *Forbes* vs. *Moffatt;* 3 *Swanston* 186, *Earl of Buckinghamshire* vs. *Hobart.*

There is another class of cases, in which he who has paid money due upon a mortgage of land to which he had some title which might be affected and defeated by the mortgage, and who was thus entitled to redeem, has the right to consider the mortgage as subsisting in himself, and to hold the land as if it subsisted, until others interested in the redemption, or who had also a right to redeem, have paid a contribution. Such are the cases, *Cass* vs. *Martin,* 6 *N. H. R.* 25; *Swaine* vs. *Perrine,* 5 *Johns. C. R.* 482—491; *Carll* vs. *Butman,* 7 *Green.* 102; *Taylor* vs. *Bassett,* 3 *N. H. R.* 294; *Russell* vs. *Austin,* 1 *Paige's C. R.* 192; vide also 1 *Johns. C. R.* 409; 5 *Pick.* 259, 267, *Saunders* vs. *Frost.*

And it makes no difference in either of these classes, as I conceive, whether the party on the payment of the money took an assignment of the mortgage, or a release ; or whether a discharge was made and the evidence of the debt cancelled. 3 *Johns. C. R.* 53 ; 15 *Mass.* 278, *Snow* vs. *Stevens ;* 2 *Conn. R.* 164 ; 1 *Ves. sen'r,* 258 *;* vide also 4 *Pick.* 505, *Barker* vs. *Parker ;* 6 *ditto* 498, *Wade* vs. *Howard.*

The debt itself may be held still to subsist in him who paid the money, as assignee, so far as it ought to subsist, in the nature of a lien upon the land ; and the mortgage be considered in force for his benefit, so far as he ought in justice to hold the land under it if it had actually been assigned. Vide 9 *Cranch* 456—498, *Pratt vs. Law.*

Justice has been effected between parties in this mode by overlooking the form of the transaction.

The principle cannot, however, in my opinion, be applied in this case.

These demandants were the purchasers of the mortgage, and it was well assigned to them. When this was done they had an undoubted right as assignees. Two of them had no interest to protect by the payment of the money. There was no necessity of resorting to any intent of the parties, or the justice of the case, to consider them assignees, or to enable them to hold the land until the debt was discharged. They were purchasers of the mortgage, and assignees in form and in fact.

If they cannot recover, it is because they themselves, since the assignment to them, have in effect discharged the debt upon which the mortgage is predicated ; and if so they are not within the principle. The mortgagees themselves could not hold under such circumstances, and the demandants can have no greater right than the mortgagees would if they held the mortgage under like circumstances.

Nor have they any right to hold the land until others interested pay a contribution. The very idea of contribu-

tion presupposes a payment by some one interested in the title.

The demandants have not redeemed the land, and if this mortgage is in force, in their hands, no one can redeem a several interest from them by paying a contribution. So held in relation to subsequent mortgagees of different tracts of land, which were all included in a prior mortgage. Vide *Coventry's Powell* 339; *ditto* 1153, *a*; 7 *Mass.* 355, *Taylor* vs. *Porter.*

So one interested as partner in the equity of redemption cannot redeem by paying his proportion of the debt. 9 *Mass.* 183, *Howard* vs. *Agry.*

In equity where, after notice that several persons are interested in the redemption of different tracts included in a mortgage, the mortgagee has released part of the premises mortgaged, those interested in the redemption of the residue may redeem by paying a rateable proportion. 1 *Johns. C. R.* 425, *Stevens* vs. *Cooper; ditto* 409, *Cheeseborough* vs. *Millard;* 1 *Vermont Rep.* 28, *Chittenden* vs. *Barney.*

The rule is just, for if the mortgagee had not released part, any one who paid and redeemed the whole would have been entitled to hold as if assignee until the others paid their share; and the mortgagee ought not in such case to release the part of one without receiving the portion of the mortgage money which he ought to pay, and thereby throw the whole burden upon the land of another, who paying after the release could not enforce a contribution.

If he receives any thing for such release to one, others interested may have it applied to the redemption of the mortgage. 11 *Mass.* 300, *Hicks* vs. *Bingham.*

If the mortgagee has done nothing affecting the rights of third persons interested in different tracts, and tending to relieve one parcel from the burden at the expense of the other, I apprehend he cannot, even on bill in equity, be compelled to be redeemed by parcels on the payment of proportionate shares. 11 *Ves.* 59, *Palk* vs. *Clinton.* But

in such case he who pays the whole may be substituted until others pay their part, on the principle before stated. It is not, however, necessary to consider this farther here. It seems very clear that we can render no conditional judgment for contributory shares in this writ of entry.

What operation this bond may have as between the principal obligors upon the one part, and the widow on the other, when she comes to claim dower, is not material, and need not be determined at this time.

Had it never been executed, and the principal obligors paid the money to protect their interest in the land without any attempt at a sale by the administratrix, there seems no reason to doubt that, as against the widow, they might have claimed to be substituted, and to be treated *quasi* assignees of the mortgage, and have held her out from dower until she paid her share towards the redemption.

Whether by interposing their right against the attempt of the administratrix to sell, and voluntarily assuming an obligation to pay all the debts of the intestate, the case does not stand as if they had received a consideration from others interested for discharging the incumbrance, or as if the intestate or a stranger had paid, or the administratrix out of the personal property, (2 *Cowen* 125 ; 13 *Mass.* 227 ; *ditto* 525 ; 17 *ditto* 564) or whether the bond is merely equivalent to a payment of the debt, leaving them the same rights as if they had paid without any attempt at a sale, may safely be left for future adjudication, if it should ever be required.

The cases *Gibson* vs. *Crehore*, 3 *Pick.* 475, *and 5 Pick.* 146, if they may be supposed to militate against any of the foregoing positions, do not present a state of facts like this ; and moreover, the law respecting mortgages is not held in Massachusetts precisely as it is in this and some other States.

In that case Gibson mortgaged to Brooks, and his wife joined in the deed. His administrators, instead of attempting to redeem, sold the right of the estate in the redemption, to Crehore, and took from him a bond to pay and discharge

the mortgage debt. He was not at that time the holder of the mortgage. In this state of facts, both Crehore and the widow had a right to redeem. Crehore afterwards paid the money to Brooks, and thus in truth redeemed, but he took an assignment; and on this account the court held that the widow could not redeem her dower from him without paying the whole mortgage money. If she had done so, Crehore must then have contributed to her, or lost his right in the land.

If she had been a subsequent incumbrancer, with the right of redemption in him, the decision would have been in accordance with other authorities, whether he took an assignment or discharge. But as they both stood upon the same level, each having an equal right, if not an equal interest, in the redemption of Brooks' mortgage, in this State, in New-York, and in Maine, she must have been suffered to redeem her right from him by paying a contribution—precisely as Crehore assented one should do in that case, after the judgment was pronounced. 6 *N. H. R.* 25, *Cass* vs. *Martin;* 3 *N. H. R.* 294, *Taylor* vs. *Bassett;* 1 *Paige's C. R.* 192, *Russell* vs. *Austin;* 7 *Green.* 102, *Carll* vs. *Butman.*

Upon the supposition that the bond in this case does not bar a claim by J. Robinson and S. Leavitt against the widow, for a contributory share, before she can hold dower; there is a very important distinction between sustaining this action upon the mortgage in favor of these demandants, and compelling her, in order to redeem her interest, to pay the whole money, and be put to a claim for contribution against others interested in the estate, or holding her liable to contribute to J. Robinson and S. Leavitt upon the ground that they have settled the debt, and may be substituted until others interested have paid their shares;—and she has the right to the benefit of this difference. It may possibly settle the question whether she ever has dower or not, as

she may be unable to do the first, but able to perform the other.

Whatever, then, may be the rights of J. Robinson and S. Leavitt, I am of opinion that this action cannot be sustained, and that the demandants should become nonsuit.

GREEN and UPHAM, Justices, concurred in opinion with PARKER, J.

RICHARDSON, C. J. I cannot concur in the judgment that is to be rendered in this case, and shall proceed to state the reasons.

It is well settled, that the mortgage in this case is not at all affected by the circumstance, that the note it was intended to secure has been presented to the commissioners, and been by them allowed. 2 *N. H. R.* 488, *Moses* vs. *Ranlet.*

No right of dower, which the tenant may have in the demanded premises, can give her any claim to hold the land, or any part of it, until her dower has been legally assigned to her. 9 *Mass. R.* 13, *Sheafe* vs. *O'Neal.*

The only ground on which the tenant relies as an answer to the action is, that upon the facts disclosed in the case, the mortgage must be considered as extinguished ; and as two of the demandants, T. S. Robinson and Parshley, do not appear ever to have had any interest in the land except what they derived from the mortgage, their title is wholly gone ; and of course, although the other demandant may have an interest in the land, still the action cannot be maintained.

It is very clear that if the mortgage is extinguished this action is defeated. To maintain this suit, a title in all the demandants must be shown. *Jackson on Real Actions,* 70.

It is insisted, on the part of the tenant, that as between her and these demandants, the debt secured by the mortgage

must be considered as extinguished, because the demandants have assumed all the debts due from the estate, and this debt among the rest, by giving a bond to the judge of probate to pay the debts.

In order to settle the question which this ground of defence presents, it is necessary to examine the situation in which these demandants, the heirs, and the widow stood, and the interest which they had in the estate when the bond was given.

The personal estate was insufficient to pay the debts. The creditors were, then, entitled to have all the personal estate applied to the payment of their claims, and the tenant being administratrix was bound so to apply it.

The tenant was entitled to dower in the equity of redemption of the demanded premises. She would have been so entitled had the estate been insolvent. 6 *N. H. R.* 25; 2 *Cowen* 246; 1 *ditto* 466; 7 *Johns.* 282; 6 *ditto* 294; 3 *Pick.* 481; 13 *Mass. R.* 525; 5 *Pick.* 150; 10 *Mass. R.* 364; 7 *Green.* 41; 15 *Mass. R.* 278; 13 *ditto* 525; 17 *ditto* 564; 13 *ditto* 227; 8 *ditto* 491.

And she could not enlarge her interest in the land by any act of her own as administratrix. Thus if she had discharged the mortgage with the proceeds of the personal estate, and left the other debts a charge upon the real estate, still she would have been entitled only to dower in the equity of redemption. The law would probably in that case entitle the heirs to be treated as assignees of the mortgage, and enable them to withhold her dower until she should contribute her due proportion towards the discharge of the mortgage. 13 *Mass. R.* 168. If, however, any thing remained of the personal estate, after all the other debts were paid, it might have been applied in discharge of this mortgage, and she would be entitled to her dower on payment of her due proportion of the debt secured by the mortgage which might have been left due after the remainder of the personal estate had been so applied. And if the

personal estate had been sufficient to pay all the debts, she would have been entitled to dower in the same manner as if there had been no mortgage. 3 *Pick.* 481. All this seems necessarily to result from the interests which the law gives to the widow and to the heirs respectively in the estate, and from the mode in which the debts are by law charged upon the estate.

The right in equity to redeem the land had descended to the heirs, subject to the widow's right of dower, and to the payment of all the debts, which the personal estate could not pay.

These demandants were the assignees of the mortgage, and entitled to hold the land until the debt was paid.

Such was the situation and such the rights of the widow, the heirs, and these demandants, when the bond was given to the judge of probate.

In order to pay the residue of the debts, that remained after the personal estate was exhausted, the widow had made application to the judge of probate for a license to sell the real estate. To prevent such sale some of the heirs gave the bond.

It may be said, perhaps, that it would have been a great convenience to the widow to have sold a part of the land to discharge the mortgage, and then to take her dower in the residue. This may be true; but then it must be remembered that the part of the land to be sold would have been incumbered not only with the mortgage, but with the right of dower, and thus encumbered would not have been very likely to sell advantageously for the heirs. And if this difficulty could have been in any way avoided, still it must be recollected that the statute gave to the heirs a right to prevent the sale by giving the bond; which right of the heirs was paramount to any right of the administratrix to a license to sell. 1 *N. H. Laws,* 366.

It now becomes necessary to consider the nature, object, and legal effect of the bond.

It was the duty of the administratrix to see all the debts paid ; and the object of her application to the judge of probate for license to sell the real estate, was to enable her to do this and close her administration. To prevent the sale the obligors in the bond undertook to pay the debts, and save her harmless. She still continued liable for the debts as administratrix. The rights of the creditors against the estate remained unchanged. The bond was then in its nature, object and legal effect, so far as respected her, a mere bond of indemnity. With respect to the debt secured by this mortgage, it amounted at most only to a contract not to call upon her for the payment of it. In the case of *Gibson* vs. *Crehore*, 3 *Pick.* 475, where the purchaser of an equity of redemption sold by the administrators of the mortgagor had given bond to the administrators to pay the debt secured by the mortgage, and had actually paid it and taken an assignment of the mortgage, it was held that this did not operate as an extinguishment of the mortgage so as to entitle the widow of the mortgagor to dower. Now the bond in the case now before us was no more intended to enlarge the widow's right of dower than it was in that case.

In this case the object of the bond was to save the administratrix harmless from all debts due from the estate, and among others the debt secured by this mortgage. In that case the object of the bond was to save the administrators harmless from the debt secured by the mortgage. The circumstance that this tenant is both administratrix and widow is wholly immaterial. So far as respects her interest in the real estate as widow, she is as much a stranger to the bond given to the judge of probate in this case as the widow was to the bond given to the administrators in that case. The object of the bond in this case was merely to prevent her from being called upon as administratrix for any debt of her intestate. It may be conceded that if these demandants had brought a suit against her as administratrix to recover the debt secured by this mortgage, the bond would

have been a good bar. But it by no means follows from
this that she is now entitled in this suit to consider the mortgage as discharged. Not only courts of equity, but courts of law also, in many cases, consider a mortgage as subsisting or discharged, as will best answer the purposes of justice. Thus in *Gibson* vs. *Crehore*, which has been before mentioned, the estates of the original mortgagor and mortgagee were united in Crehore—and as to all the world, except the mortgagor's widow, the mortgage might be considered as discharged. But to have so considered it in that case would have been to give her dower in the land unencumbered, where she was only entitled to dower in the equity of redemption; and the court very properly held that as respected her the mortgage must be considered as still subsisting. The same principle was adopted by this court in *Cass* vs. *Martin*, 6 *N. H. R.* 25.

In *Taylor* vs. *Bussell*, 3 *N. H. R.* 294, where two were severally seized of two distinct parcels of a tract of land which had been mortgaged to a third person, and one of them had paid the debt and taken an assignment of the mortgage, it was held that he might consider the mortgage as discharged, and bring an action for contribution, or consider it as subsisting, and hold the land till the other paid a reasonable contribution.

The case of *Carll* vs. *Butman*, 7 *Green.* 102, was a writ of dower. The demandant claimed her dower in an acre of land. The facts were, that E. Holmes being seized in 1813, conveyed the land to J. C. Jones in mortgage, and afterwards, in 1814, conveyed the same to Carll, the husband of the demandant, in fee with warranty. In 1819 the demandant was married to Carll. In 1821 Carll the husband conveyed the land to the tenant by deed of quit-claim, and in 1822 Jones released all his right to the tenant. The court held that to consider the mortgage as still subsisting, so far as respected the demandant, was equitable, and deprived her of nothing to which she was justly entit-

led ; and that the mortgage was not to be considered in that case as extinguished by the union of the estates of the mortgagor and the mortgagee in the tenant.

This principle, which is recommended by its equity and justice, has been adopted by the courts of law from the courts of equity, where it has long been established. 3 *Johns. C. R.* 53, *Gardner* vs. *Astor ;* 2 *Cowen* 246, *James* vs. *Morey;* 18 *Ves.* 384, *Forbes* vs. *Moffatt ;* 2 *Fonblanque* 162—164 ; 5 *Johns. C. R.* 482, *Swaine* vs. *Perrine.*

If the mortgage in this case be considered as subsisting, the legal title is in the demandants. Stephen Leavitt and Abigail Leavitt are each seized of one third of the right in equity to redeem the land, and this tenant, the widow, is entitled to dower in the equity of redemption.

And why is the mortgage not to be considered as subsisting ? I see no sound reason. A judgment in this case in favor of the demandants will be no bar to any claim which this tenant or the heirs may have to an interest in the equity of redemption. It will be conclusive as to the right of seizin of the demandants at the time it is rendered, but the moment the heirs and the widow tender their just proportion of the debt secured by the mortgage, a right will accrue to them to demand and recover their estate in the land. A judgment in favor of a mortgagee in a writ of entry is never a bar, after a tender of the money, secured by the mortgage, legally made in due season. Not only the heirs of the intestate in this case, but the widow, will have a clear right to maintain a petition to redeem the land, under the second section of the statute of July 3, 1829. 1 *N. H. Laws* 487 ; 5 *Pick.* 146, *Gibson* vs. *Crehore ;* 6 *N. H. R.* 25, *Cass* vs. *Martin.*

It seems to me that by considering the mortgage as still subsisting, all who have any interest in the estate are left with all their rights secure and safe ; that no rule of law is violated ; that all which either law or equity requires, in this case is fully done.

But if the mortgage is considered as discharged, in what situation are those interested in the mortgage placed? The interest of Parshley and T. S. Robinson in the land will have gone to pay a debt for which they were liable as sureties of J. Robinson and S. Leavitt. They may then it seems have a remedy against their principals. But why are they to be deprived of the security which the mortgage affords them for what they had paid to the bank for the mortgage. While the mortgage subsists, their interest is secure. If the mortgage is discharged they may or they may not be able to recover of J. Robinson and S. Leavitt what they will have a just claim to recover. But what have they done to forfeit their claim to have the mortgage considered in force? Why have they not as just a claim to have it so considered as Crehore had in *Gibson* vs. *Crehore*, 3 *Pick.* 475, and Martin had in *Cass* vs. *Martin*, 6 *N. H. R.* 25?

It is equitable and their security requires, that it should be considered as in force. No rule of law is violated—no injury is done to any one by holding that the mortgage remains undischarged. But it seems to me that injustice will be done to Parshley and T. S. Robinson if it be held to be discharged.

Then on what ground will J. Robinson be left, if the mortgage is considered as discharged? Having become responsible to pay all the debts with S. Leavitt, one half the debt secured by this mortgage must be paid by him, and he will be entitled in right of his wife to one undivided third part of the land, subject however to the widow's right of dower.

If, the mortgage being considered as discharged, he will have no legal claim to a contribution from Abigail Leavitt and the widow, when they assert their respective rights, then by holding the mortgage discharged, we take from him the amount they would otherwise be bound to contribute. This seems to me to be neither just nor equi-

table.    It has been said in the argument of counsel, that having voluntarily assumed to pay the debts, he will have no right to complain of this.    But no one will for a moment suppose that by assuming the debts he intended to discharge the mortgage.    And his ground of complaint will be that the loss will be thrown upon him by applying to his case a new rule, which has never been applied in any similar case whatever before this time.

But if in case the mortgage is held to be discharged, he will still be entitled to such contribution, why shall not the mortgage be held to remain in force to secure that contribution ?    In *Carll* vs. *Butman, 7 Green.* 102, the debt had actually been paid, and yet the mortgage was held not to be discharged.    In all such cases up to this time, it has always been held that the mortgage shall be considered as remaining in force ; and I see no ground on which this case can be held to form an exception to the general rule.    No case has been cited which can sustain such an exception.

I am, on the whole, of opinion that it is now the settled rule of law as well as of equity, that a mortgage is never to be considered as discharged so long as it is necessary to consider it otherwise, in order to give those who have the estate of the mortgagee the full enjoyment of that estate. And this rule would have been applicable, had this been a writ of dower brought by this tenant against the heirs, and they had been the assignees of the mortgage, and had actually given up the note secured by it to her to be cancelled.    In such a case it must be considered as subsisting in order to compel her to contribute her just proportion of the mortgage money.    But the case before us is much stronger.    Here by considering the mortgage as discharged, we let in not only the widow, but the heirs, to the prejudice of those who hold the estate of the mortgagee ; and we let them in, not only to the prejudice of J. Robinson, the principal, but to the prejudice of the innocent sureties in the bond, who probably never once dreamed that

by becoming parties to that instrument they discharged the mortgage. Besides, we must consider the mortgage discharged, not because the debt has been paid, but merely because those who had the estate of the mortgagee stipulated not to enforce the payment of the debt against this tenant as administratrix. If a case can be conceived in which the rule just mentioned can be applied, this seems to me to be such a case.