## OFFUTT *vs.* FLAGG.

Where personal property has been mortgaged, and is left in the possession of the mortgagor, and the mortgage is recorded in the town where the mortgagor resides, as is provided by law, a subsequent removal of the mortgagor to another town in the state does not render a new record of the mortgage necessary in such town.

The same rule holds where a mortgage of personal property has been duly executed in another state, and the mortgagor removes with such property within the limits of this state.

THIS was an action of trover, and was submitted to the court for their decision on the following statement of facts.

Alanson E. Coon, on the 30th day of May, A. D. 1836, mortgaged to Edward P. Offutt a certain lot of personal property at Lowell, Massachusetts, at which place the parties at the time resided. The mortgage was given to secure $50·00 on demand, and was duly recorded, on the day of the date, in said Lowell, in conformity to the laws of Massachusetts.

Coon in the spring of A. D. 1837, moved to Tyngsborough, Mass., and afterwards to Nashua, N. H. in June, of the same year. After Coon had been in Nashua four months, in October, 1837, John Flagg of Nashua attached on a writ vs. Coon, and for a debt contracted in said Nashua, a portion of said mortgaged property, valued at $20·00. The goods thus attached were demanded properly of Flagg by Offutt, but not till November 21, 1837; and the defendant refused to deliver said goods to the plaintiff.

The mortgage was never recorded in New-Hampshire, though Offutt knew Coon had left Lowell, and that he was at work somewhere on the Nashua and Lowell rail-road.

It was agreed that if, in the opinion of the court, upon the foregoing statement, the plaintiff could maintain his action, judgment should be rendered in his favor for the value of said property; otherwise the plaintiff should become nonsuit.

Offutt *v.* Flagg.

*G. Y. Sawyer*, for the plaintiff, contended that the mortgage from Coon to the plaintiff was executed in Massachusetts, where the parties to the contract resided, and by the laws of that state is valid ; and cited to this point *Badlam* vs. *Tucker*, 1 *Pick. R.* 389 ; *Ward* vs. *Sumner*, 5 *Pick. R.* 59. The mortgaged property was thereby actually transferred to the plaintiff, and the whole legal title conditionally vested in him by virtue of a conveyance valid under the laws of the state where it was executed, and which, if executed in this state, would have been held valid, and passed the property here. *N. H. Laws, ch.* 80, *stat. of June* 22, 1832 ; *Ash* vs. *Savage*, 5 *N. H. R.* 545. Subsequently to this, the property was brought into this state, the title continuing in the plaintiff up to the moment when it was transported across the boundary line ; and it is conceived that it would be difficult to present a stronger case for the application of the rule that the *lex loci* is to operate and give effect to the contract. *Houghton* vs. *Page*, 2 *N. H. R.* 42 ; *Dyer* vs. *Hunt*, 5 *N. H. R.* 401 ; *Saunders* vs. *Williams & a.* 5 *N. H. R.* 213. The question in this case is, not whether an assignment or transfer of property by act of law in another state, or by the voluntary act of the owner—a citizen of that state—executed there—shall prevail against a subsequent attachment of the property in this state, *the property at the time of the attempted transfer being within this state, and consequently under the jurisdiction of this government.* Under such circumstances the enquiry would be, whether the foreign contract, or law, if effect were given to it in our courts, would contravene our policy, or violate any public law, or would prejudice the rights and interests of the state or of its citizens ? If so, it would not be permitted to operate here ; for it is only upon the principle of comity that foreign laws, and contracts made under those laws, are recognized and enforced in the domestic tribunal. *Greenwood* vs. *Curtis*, 6 *Mass. R.* 378 ; *Ingraham* vs. *Geyer*, 13 *ditto* 146 ; *Fox* vs. *Adams*, 5 *Green. R.* 245 ; *Blake* vs. *Williams*, 6 *Pick.*

Offutt *v.* Flagg.

*R*.286 ; *Abraham* vs. *Plestew*, 3 *Wendell R*. 538 ; *Blanchard* vs. *Russell*, 13 *Mass. R*. 1 ; *Prentiss* vs. *Savage*, 13 *Mass. R*. 20. But in this case the question is, whether property, the legal title to which, when in another state, where the owner had his domicil, by virtue of a valid transfer there, vested in an alienee, upon being brought into this state may be attached, and held as the property of the former owner, in total disregard of the transfer.

*Abbot & Fox*, for the defendant, contended that the object of the statute, as to the transfer of personal property, was to prevent frauds, by making possession the test of property as between debtor and creditor, unless public notice was given to the contrary, and that it was intended to apply to all persons and property within this state, and to property brought here from other states.

The reason of the law exists in such cases in full force, and its application is imperative. This requires that the mortgage shall be recorded within the state, or the object is not obtained ; and unless the law is so holden, an unjust distinction is make in favor of citizens of another state, to the prejudice of our own citizens.

It is a general rule that our country shall not suffer prejudice by comity : if one of two laws must give way, our own is entitled to the preference. *Story's Conflict of Laws*, 279. Every country has the right of regulating the transfer of all the personal property within its limits ; and where there are conflicting titles to property, the *lex rei sitæ* will prevail. *Story's Conflict of Laws*, 315, 323, *and note* 326.

Questions analogous to this in principle have been often discussed and decided. Such are the cases of conflict of laws arising under the insolvent assignment, and trustee laws of the various states, and sales and attachments of property in different jurisdictions ; and we believe that all these cases support the principle for which the defendant contends.

To this point the following authorities were cited : 13

Offutt *v.* Flagg.

*Mass. R.* 19, *Walsh* vs. *Farrand & a.; Ditto* 18, *Bradford* vs. *Farrand;* 5 *Mass. R.* 511, *Baker* vs. *Wheaton;* 7 *Green.* 337, *Judd* vs. *Porter;* 16 *Pick. R.* 341, *Burlock* vs. *Taylor;* 5 *Green.* 245, *Fox* vs. *Adams;* 15 *Pick. R.* 18, *Fall River Iron Works* vs. *Croude & Trustee;* 2 *Kent's Com.* 458, *note;* 5 *N. H. R.* 213, *Saunders* vs. *Williams & Trustees.*

Upham, J. The case finds that the mortgage from Coon in this instance to the plaintiff was executed in Massachusetts, where the parties to the contract resided at the time, and was duly recorded, in compliance with the requisitions of their statute. Such mortgage, therefore, by the laws of Massachusetts, is valid.

The property was there—the contracting parties were there—and, on every principle, the *lex loci* governs. The property then passed by the mortgage, vesting the title conditionally in the plaintiff.

Such is conceded to have been the case; but it is contended that when the mortgagor of the property came within this government, bringing the property with him, the rights of the mortgagee terminated, unless he caused the mortgage to be duly authenticated here, precisely as though the property had been within this jurisdiction when the mortgage was first executed—that such former mortgage was in fact abrogated, and the *lex rei sitæ* prevailed the moment the property was brought within the limits of this state.

Numerous cases have been cited as to the conflict of laws betwixt different governments, but the case does not seem to us properly to involve a question of that description.

The conveyance in Massachusetts, under the laws of that state, raised no conflict with our laws here; neither did the removal of the property within this jurisdiction. The sole question is, whether the omission to do an act here, at a period subsequent to the conveyance, shall cause the plaintiff

to forfeit rights previously acquired in Massachusetts. It is strictly a question as to the effect of our laws on property for the first time brought within our jurisdiction, and not a question of conflict of laws betwixt this state and Massachusetts.

And what has been done here, or what has been omitted to be done in this state, that should occasion the forfeiture of this plaintiff's right to his property? It is said that the mortgage of such property is not here recorded. But does our statute require such record?

It is provided by the act to prevent fraud in the transfer of personal property, passed June 22, 1832, that "no mortgage of personal property, made after that date, should be valid except between the parties to it, unless possession should be taken and retained by the mortgagee, or the mortgage should be recorded in the office of the town in which the mortgagor resided."

Now, where did the mortgagor reside when this mortgage was made? Confessedly not within the limits of this government; but it so happens that in the town where he did then reside, the mortgage was duly recorded; but whether this had been so or not, if the conveyance had once become legally a mortgage; that is, had all the necessary requisites at the time been complied with so as to make it valid and subsisting, and to cause it once to be regarded as such by our law, it would after that time, for aught that appears in our statute, always remain a mortgage.

The moving of the property from place to place, whether within our own limits, or from a foreign government here, does not contravene any of the provisions of this act. The law is silent upon the subject; and there is no principle of construction which, in our belief, would justify us in extending the operation of the act beyond cases specifically provided for.

The general rule as to conveyances is, that property passes under any instrument legally executed. To this there is the exception, that such conveyances, to operate as to third per-

Offutt *v*. Flagg.

sons, must in certain cases be duly recorded. This is a limitation to the general rule, and can only exist by express enactment.

There would, farther, be most serious objections to such a provision or construction of the act as is contended for in this and similar cases, as it would place it in the power of the mortgagor, who was left in possession of the property, to defeat a mortgage of such property at any moment by removal from one town to another, or from another state here ; and, in the absence of any express provision of the statute directly applicable to such cases, it would be the duty of a court to infer that they were not intended to be specially provided for by the legislature.

The individual who causes an attachment to be made on property in possession of another, must look to the title. Possession is mere *prima facie* evidence of title. If the holder of it is recently from an adjoining state, there may be an owner of it there, or mortgages upon the property ; and so there might be at the former residence of the holder of the property, if he had recently removed from any one section of the state to another. And it would be quite as easy to learn the facts as to the true title of the property in the one case as the other. In either case the law leaves the whole matter to the industry of the creditor. We are satisfied that it contains no provision which requires us to hold the mortgage as void, or that any rights acquired under it are forfeited, from the mere fact of removal. The mortgage still retains its original character, and the mortgagee's rights remain in full force.

The attachment, therefore, by the defendant cannot be sustained, and the plaintiff is entitled to recover the value of the property taken.

*Judgment for the plaintiff.*