## SMITH *vs.* MOORE & a.

A mortgagee is to be regarded as having the legal estate, for the purpose of all lawful protection of his interests ; but for other purposes the mortgage is, in general, held to be a mere security.

Where a mortgager in possession cuts timber growing upon the land, the mortgagee cannot claim the timber, or reduce it into his possession, or treat the mortgager as a trespasser, if, under the circumstances of the case, his assent to the act of the mortgager may be fairly presumed by a jury. But if such assent is not shown, or fairly to be deduced from the facts of the case, a cutting of timber amounts to waste, which may be restrained ; the mortgager is liable also to the suit of the mortgagee, and the latter, before any lawful rights of third persons intervene, may take possession of the timber.

A mortgage of personal property is good, as between the parties to it, without any record or change of possession.

But, by the statute of 1832, no mortgage of personal property, subsequently made, is valid against any other person than the parties to it, unless possession of the property be delivered to and retained by the mortgagee, or unless the mortgage is recorded in the office of the clerk of the town where the mortgager resides at the time of its execution.

If the mortgager resides out of the state when the mortgage is executed, there can be no record of it under the statute ; and the mortgager must take and retain possession of the property in order to hold it against other creditors of the mortgagee, unless perhaps in cases of actual notice. Whether such notice would be sufficient, *quere ?*

A symbolical delivery of possession is not sufficient. In order to come within the provisions of the statute, there must be such a possession as is required to be taken by the vendee on an absolute sale. And the possession must be retained in the same manner.

TRESPASS, for taking a quantity of manufactured lumber and pine logs.

Plea, the general issue, with a brief statement in justification.

On the trial, it appeared in evidence that one Daniel Trafton, of Stanstead, Lower Canada, July 18, 1836, purchased a tract of white pine timber land, in Littleton, in this county, of Adams Moore, one of the defendants; which land was wild and uncultivated, except a small piece of three or four acres. The whole tract was five hundred acres.

At the time Trafton bought the land of Moore, he paid several hundred dollars, and mortgaged the same land to secure the payment of three promissory notes, being for the balance of the purchase money.

In the winter of 1836–7, Trafton, without any license from Moore, took off a large quantity of timber from the land, and hauled it into mills in Bethlehem, where it was manufactured, except a few logs; which lumber is the subject of this suit.

The defendant Moore, on the 14th of August, 1837, procured a writ against Trafton, on one of the notes, and caused the lumber to be attached by Gile, the other defendant, who was then a deputy sheriff, and afterwards caused the same to be sold, and applied on the execution which issued on the judgment according to law.

The lumber was in the town of Bethlehem when it was attached.

The plaintiff produced a mortgage of the lumber, from Trafton, dated August 12, 1837, which was recorded in the town clerk's office, in Littleton, on the 14th August, 1837.

The defendants objected that the mortgage was invalid against creditors, because the mortgager resided out of the state, and the mortgagee did not take actual possession of the lumber; and because if a record, without possession, could avail in such case, the mortgage should have been recorded in Bethlehem, where the lumber was situate, and not in Littleton.

The defendants also contended that the land from which

Smith *v.* Moore.

the lumber was taken, being wild, and valuable only for the timber, Trafton was a trespasser in cutting the timber, and that Moore had the legal right to take the lumber wherever he could find it.

The plaintiff offered evidence tending to show that the mortgage was recorded in Littleton, prior to the attachment, and that the defendants had personal knowledge of the mortgage prior to such attachment.

The plaintiff also contended, that such was the nature of the articles conveyed to him, being planks, boards, clapboards, shingles and logs, lying in a mill-yard, that no removal was necessary to give him possession of the property; and that it was sufficiently and legally in his possession, without any notice to other creditors, by a record of the mortgage.

It appeared that there was a lien on the lumber, for sawing the same, and that the mill-owners claimed to detain it till their bill was paid.

The court instructed the jury that if the defendant Moore had notice of the mortgage prior to his attachment, that was a sufficient answer upon that point of the case, and that a record of the mortgage in Littleton would be equivalent to notice.

The jury returned a verdict for the plaintiff, and the defendants moved for a new trial.

*Ainsworth*, for the defendants.   Moore, the defendant in interest, at the time of the trespass complained of was seized in fee by a mortgage of the land from which the lumber was taken by Trafton, and was so seized at the time Trafton entered and cut the timber.   Trafton, the mortgager, entered and cut the timber without license from Moore, and was in so doing a trespasser.

A deed of bargain and sale and of mortgage, in fee, vests the seizin of the estate in the mortgagee.   *5 N. H. Rep.* 54, *Pettingill* vs. *Evans ;* 1 *N. H. Rep.* 169, *Brown* vs. *Cram ;*

13 *Mass. R.* 515, *Green* vs. *Kemp ;* 16 *Mass. R.* 39, *Coleman* vs. *Packard ;* 2 *N. H. Rep.* 453, *Hartshorn* vs. *Hubbard ;* 3 *Mass. R.* 138, *Newall* vs. *Wright ;* 2 *Greenl. R.* 173, *Smith* vs. *Goodwin ; Ditto* 132, *Blaney* vs. *Bearce ;* 2 *Shepley* 132, *Bussey* vs. *Page.*

If the mortgager of the land, being in possession, cut down and carry away timber trees growing thereon, he is liable to the mortgagee in an action of trespass *quare clausum fregit,* for their value.    2 *Greenl. R.* 387, *Stowell* vs. *Pike ; Ditto* 173, *Smith* vs. *Goodwin.*

The defendant had as good a right to attach the property on another debt, as he had to sue for trespass, and attach it, of which we think there could be no doubt.

Previous to June 22, 1832, property might be held by mortgage, without possession, or record, when it was done honestly and without fraudulent intention of the parties ; but so many cases of fraud were practiced, that the legislature passed an act, that no mortgage thereafter should be valid " unless possession of the property be delivered to and retained by the mortgagee, or unless the said mortgage be recorded in the office of the clerk of the town where the mortgager shall reside at the time of making the same." 2 *N. H. Laws* 58.

We contend that a mortgager, living out of the state, and of course not having a residence in any town in the state, cannot have any advantage by the second provision of this statute, and must pursue the alternative provision, that is, by giving the mortgagee possession of the property mortgaged ; and in no case of this kind can the mortgagee hold by such mortgage, unless he takes and retains possession of the mortgaged property.

If there was only one provision in the statute, and that was that the mortgage should be recorded in the town where the mortgager resides, then this and like cases, where persons not residing in the state wished to pledge their personal estate by way of mortgage, might require the court to ex-

Smith *v.* Moore.

plain the intentions of the statute, and the interpretation might reasonably be, that the legislature intended the mortgage to be recorded in the town where the property was kept.

*Bellows*, for the plaintiff, contended that a mortgagee of land has but a chattel interest, and before entry could not maintain trespass nor an action for waste ; 6 *Mass. R.* 51 ; 6 *Conn. R.* 142 ; 6 *Johns. R.* 290 ; 4 *Kent's Com.* 155, 261 ; 1 *Pick. R.* 90 ; 14 *Pick. R.* 525 ; 15 *Johns.* 205 ; 2 *Story's Eq.* 284—that Moore, having elected to attach the lumber, had waived any title or right to claim a property in it ; 5 *Pick. R.* 178 ; 14 *Pick. R.* 332—that possession could not be taken on the execution of the mortgage of the lumber, the owners of the mill having a lien upon it, and it was sufficient, therefore, to take it afterwards, a symbolical delivery being enough ; 7 *East* 558 ; 12 *Mass. R.* 300 ; 5 *N. H. Rep.* 570 ; 20 *Pick. R.* 280—and that notice of the mortgage was equivalent to a record ; 5 *N. H. Rep.* 181 ; 8 *N. H. Rep.* 264.

PARKER, C. J.    It appears that the land, from which the lumber was taken, was purchased by Trafton, from Moore, one of the defendants, and mortgaged to secure a part of the purchase money.

The first question which arises, is, upon the right of the mortgager to cut timber upon the land mortgaged.

Unless the different purposes to be answered are adverted to, there would appear to be much confusion in the books relative to the rights of the mortgager and mortgagee ; and with those purposes in view, an attempt to reconcile all the decisions would be made in vain.

Courts of law were formerly disposed to construe the conveyance by mortgage strictly in favor of the mortgagee, as a conveyance of the legal estate, leaving to the mortgager no right except that of regaining the estate on the perform-

ance of the condition. 1 *N. H. Rep.* 171, *Brown* vs. *Cram.* And, for certain purposes, such is a true view of the effect of a mortgage.

If in possession, under circumstances showing the assent of the mortgagee, he was treated as a mere tenant at will, or sufferance ; and some authorities went so far as to indicate an opinion that he might, by such possession merely, be treated as a trespasser, at the election of the mortgagee. 5 *N. H. Rep.* 54, *Pettingill* vs. *Evans.*

On the other hand, courts of equity treated the mortgage as a mere security for the debt, and the interest of the mortgagee as a mere chattel ; and held that the debt was the principal, and the land the incident, and that the interest of the mortgagee would pass by the mere transfer of the debt to secure which the mortgage was executed. 1 *Johns. R.* 580, *Green* vs. *Hart.* Such was the view of Lord Mansfield, in relation to mortgages at law. 2 *Burr.* 978, *Martin* vs. *Mowlin ; Doug.* 632. And courts of law, for certain purposes, now hold the same doctrine with the courts of equity, on this subject. 4 *Johns. R.* 41, *Jackson* vs. *Willard ;* 11 *Johns. R.* 534, *Runyan* vs. *Mesereau ;* 5 *N. H. Rep.* 420, *Southerin* vs. *Mendum.* It was found necessary, in order to preserve the just rights of the parties, as understood by them, in making contracts of that description.

Thus it has been held, that where lands are conveyed, and mortgaged back with a condition for the support of the mortgagee during life, the mortgager is entitled to possession until condition broken, or waste done. 2 *N. H. Rep.* 453, *Hartshorn* vs. *Hubbard ; Dearborn* vs. *Dearborn,* (9 *N. H. Rep.* 119 ;) *Flanders* vs. *Lamphear,* (*Ditto* 201.) But this has been decided otherwise in Massachusetts, confessedly against the intention of the parties, because the mortgage conveyed the legal estate. 16 *Mass. R.* 39, *Coleman* vs. *Packard.*

So the wife of one who had mortgaged prior to the cov-

erture, is entitled to dower against all persons but the mortgagee himself, and entitled to redeem. 13 *Mass. R.* 229, *Bolton* vs. *Ballard;* 6 *N. H. Rep.* 25, *Cass* vs. *Martin; Bullard* vs. *Bowers,* (10 *N. H. Rep.* 500.)

But, for the security of the just rights of the mortgagee, it is held, where there is nothing to indicate an intention to the contrary, that he may enter at his pleasure, and oust the mortgager ; and may maintain trespass against him if he refuse to quit the possession, or in a writ of entry recover against him as a disseizor. 3 *Mass. R.* 138, *Newall* vs. *Wright ;* 2 *Greenl. R.* 137, *Blaney* vs. *Bearce, and auth. cited.*

By regarding the different purposes to be answered by the application of these different rules, many of the cases in the reports are well reconciled.

A mortgage is usually intended as a mere security until condition broken ; but in order to the full protection of that security, it must, in most instances, be regarded as, what it purports to be on its face, a conveyance of the land.

The true general principle seems to be, that the mortgagee is to be regarded as having the legal estate, for the purpose of all lawful protection of his interests ; but for other purposes the mortgage is, in general, held to be a mere security for the debt. *Glass* vs. *Ellison,* (9 *N. H. Rep.* 69) ; 5 *N. H. Rep.* 429.

Thus, if there be nothing to indicate an intention to the contrary, he may enter at once, and take the profits, to be applied to the redemption of his debt.

And he may maintain an action against the mortgager, or his assignee, for taking down a building, or other injury lessening the value of his security in a manner not within the contemplation of the parties. 5 *N. H. Rep.* 54 ; 2 *Greenl. R.* 173, *Smith* vs. *Goodwin.*

And it has been held, generally, that if a mortgager in possession cut down and carry away timber trees, he is liable

to the mortgagee in an action of trespass *quare clausum fregit,* for their value.    2 *Greenl.* 387, *Stowell* vs. *Pike.*

But the mortgager remaining in possession, without objection, may cut fuel, and take the crops, without being liable to account; both of which might, to some extent, diminish the value of the estate.   Nor can the mortgagee sustain a claim for rents and profits, until he enters.   *5 N. H. Rep.* 530, *Cavis* vs. *McClary, and auth. cited.*

In accordance with this principle, it is held that the assignment of the mortgage shall operate to pass the legal estate, or as a discharge of the mortgage, according to the justice of the case, and the just intent of the parties.   7 *N. H. Rep.* 100, *Robinson* vs. *Leavitt;* 8 *N. H. Rep.* 429, *Bailey* vs. *Willard;* 5 *N. H. Rep.* 252, *Willard* vs. *Harvey;* 3 *N. H. Rep.* 294, *Taylor* vs. *Bassett;* and that a formal discharge may, for the like purpose, operate as an assignment. 7 *N. H. Rep.* 392, *Page* vs. *Foster; and auth. cited* 7 *N. H. Rep.* 101.

And an assignment of the debt, by parol, will pass the interest of the mortgagee in the lands.   5 *N. H. Rep.* 420.

But an assignment of the mortgage, without an assignment of the debt, passes nothing.   19 *Johns. R.* 325, *Jackson* vs. *Bronson;* 2 *Cowen's R.* 231, *Wilson* vs. *Troup.* Of course an absolute conveyance by the mortgagee, before entry, and without an assignment of the debt, will pass no title. 6 *N. H. Rep.* 205, *Bell* vs. *Morse.*

Such being our view of the law upon this subject, we are of opinion that where the mortgager in possession cuts timber growing upon the land, the mortgagee cannot claim the timber, or reduce it into his possession, or treat the mortgager as a trespasser if, under the circumstances of the case, an assent to the act of the mortgager may be fairly presumed by a jury.

But if such assent is not shown, or fairly to be deduced from the facts of the case, a cutting of timber amounts to waste, which may be restrained, (2 *Story's Eq.* 286); the

Smith *v.* Moore.

mortgager is liable also to the suit of the mortgagee, (5 *N. H. Rep.* 54 ; 2 *Shepley's R.* 132, *Bussey* vs. *Page*) ; and the latter, before any lawful rights of third persons intervene, may take possession of the timber. In New-York, however, it has been held that a mortgagee cannot maintain an action of waste against the mortgager, at least until after a forfeiture ; and that he has no property in trees cut down by the mortgager, so as to maintain trover for them. 15 *Johns. R.* 205, *Peterson* vs. *Clark.*

The question whether there was a license, or assent, in this case, was not submitted to the jury ; and all the evidence bearing upon the point may not have been adduced. So far as it appears in the case before us, the jury would have been fully warranted in finding an assent. The land was covered with timber, and could not therefore be occupied until it was cleared. There is nothing to indicate that Trafton was not to take possession of his purchase until the expiration of the credit which was given him.

Payment of part of the purchase money was made at the time of the purchase, and no objection to the cutting of the timber appears to have been made by Moore, the mortgagee. The attachment of the timber afterwards by Moore is a recognition of the right.

If this had been done under protest of a right in himself, but for greater security, it would have lost its significance in this particular. But, for aught which appears, the attachment was made without any claim of property in the timber, at the time.

This attachment, however, forms a good answer to the action, unless the plaintiff has a valid title, by reason of his mortgage of the timber itself.

As between the parties, this mortgage was good, there being sufficient evidence to show the assent of Moore to the cutting of the timber. But by the statute of 1832 it was of no validity against the creditors of Trafton, unless possession was taken under it. By the provisions of that act,

no mortgage of personal property, subsequently made, is valid against any other person than the parties to it, unless possession of the property be delivered to and retained by the mortgagee, or unless the mortgage is recorded in the office of the clerk of the town where the mortgager resides at the time of its execution. There are certain exceptions not material here.

This mortgage could not be made valid against creditors, by any record of it, because the mortgager did not reside in this state at the time, and the record in the town clerk's office, provided for by the statute, is a record within this state, and not within another government. The second section of the act makes it the duty of the town clerks to record such mortgages; and it is very clear that this provision cannot apply to town clerks out of the state, even in those governments where such an office exists.

If the property had been situated out of the state when the mortgage was made, and the mortgage had been valid according to the laws of the place, a subsequent removal of the property to this state would not have affected its validity. *Offutt* vs. *Flagg*, (10 *N. H. Rep.* 46.)

To protect the property against creditors, where the mortgager resides out of the state, the mortgagee must take and retain the possession; unless, perhaps, in cases of actual notice. The record of the mortgage in Littleton, therefore, even if it was made before the attachment, can be of no avail.

Some attempt appears to have been made to show actual notice to the defendants of the existence of this mortgage, before the attachment. The character of that evidence is not stated, and it is not necessary at this time to pass upon that question. The provisions of this act respecting the record of mortgages of personal property, bear perhaps so strong an analogy to the provisions of the law requiring a record of conveyances of real estate, that we may be required to hold that notice will have the effect of a record, in

mortgages of personal property, where it would have been sufficient in conveyances of real property. But it is by no means clear that notice will answer the purpose, in cases where no record can be made under the statute of 1832. If notice is merely equivalent to a record, the enquiry arises, what is the effect of a record; and if that can have no effect, because none can be made, a notice may be inoperative. Where notice may be sufficient, it does not appear to be well settled what may amount to a sufficient notice, short of actual knowledge of the existence and contents of the deed. In relation to real estate, possession puts a party on enquiry, and he is chargeable with notice of all he might have learned upon such enquiry. Farther than this it is believed that little has been settled.

Under the statute of 1832, a mortgagee of personal property may fully secure his rights, by taking and retaining the possession. This undoubtedly is equivalent to a record. But on the case before us, there is no sufficient evidence of possession by the plaintiff. A symbolical delivery, even if one was made, is not sufficient. In order to come within the provisions of the statute, there must be such a possession as is required to be taken by the vendee on an absolute sale. And the possession must be retained in the same manner. There is here no evidence of any actual delivery, or of an attempt to reduce the lumber into the possession of the plaintiff. 2 *Shepley's R.* 303, *Cobb* vs. *Haskell.*

The lien of the mill-owners, who held the lumber in the process of manufacture, furnishes no sufficient excuse for a neglect to take possession. For aught which appears, that might have been discharged, or some arrangement for securing the possession to the plaintiff have been made with them. But if that could not have been done, measures might have been taken to preserve a possession in the plaintiff, subject to their lien.

For these reasons the verdict must be set aside, and a
*New trial granted.*