# GRAFTON,

## JULY TERM, A. D. 1845.

## MORSE *v.* POWERS & a.

What is necessary to constitute a change of the possession of personal property mortgaged, as required by the statute, when the mortgage is not recorded, depends upon the situation of the property.

A person mortgaged a lot of boards, &c., which were then at the mill-yard of W., and his agent went thither for the purpose of giving the mortgagee possession, pointed them out to the mortgagee, and told him that he put him in possession. The mortgagee at the same time told W. that he would pay him for the use of the mill from that time, and he did so. The property remained at the mill, and the mortgage was not recorded; — *Held,* that the delivery and retention of possession were both sufficient to meet the requirements of the statute..

Another portion of the boards contained in the same mortgage was at a public landing-place kept by one D. The agent of the mortgagor went thither and pointed them out to the mortgagee, and told him that he put him in possession under the mortgage. The mortgagee requested D. to take charge of them for him; but D. refused, notwithstanding the mortgagee offered to pay for the use of the landing from that time till the boards should be removed. This was done at evening, and the mortgagee returned home without doing any further act to take or retain possession; — *Held,* that the delivery and retention of possession were both sufficient.

It seems that similar circumstances would, even in the case of an absolute sale, be a sufficient explanation of the want of a change of possession to manifest the *bonâ fide* nature of the transaction, even if the goods were, at the time, in the possession of the vendor.

A., being a resident and citizen of Vermont, made a mortgage in New-Hampshire, valid by the laws of that State, and on the same day went into Vermont and there executed an assignment of all his property in Vermont, giving certain preferences, valid by the laws of that State, but

not valid by the laws of New-Hampshire; —*Held*, that the two instruments could not be construed together as parts of one transaction, so as to avoid the mortgage upon the ground that the assignment was fraudulent as to creditors.

A mortgage made in New-Hampshire, conveying personal property there situated, was conditioned to save the mortgagee harmless from certain liabilities, and also to save one R. M. harmless from a certain note to which he, with the mortgagor, was a party, but which was the proper debt of the mortgagor; —*Held*, that the note referred to was admissible in evidence for the purpose of repelling an inference of fraud, which might otherwise have been drawn from its non-production.

The parties to the mortgage made oath, as required by statute in New-Hampshire, that the mortgage was made to secure the mortgagee against his liabilities in the manner appearing upon the mortgage, but the note on which R. M. was liable was not referred to in the oath; —*Held*, that the oath in no way estopped the mortgagee from producing the note, in order to repel any such inference of fraud.

In order to show fraud in the mortgage, evidence was offered tending to show that the payee and holder of that note, against which R. M. was indemnified, had previously taken a transfer of certain stocks in a corporation from the mortgagor, apparently absolute, but in fact by way of security; — *Held*, that such evidence was inadmissible, especially as it did not connect the transfer with the note specified in the mortgage.

It is not essential to the validity of a mortgage, that it should be wholly for the benefit of the mortgagee, nor will a trust for the benefit of a third person of itself give it the character of an assignment, within the act requiring assignments to comprehend all the property of the debtor, and to be without preferences.

TROVER, for a quantity of pine boards.

It appeared that Timothy Morse, of Newbury, Vermont, on June 26, 1843, was the owner of the boards, a part of which at that time were in Whitman's mill yard, and the residue at Dutton's landing, in Haverhill. On that day T. Morse made his mortgage of said boards, together with various other articles of personal property, situate in New-Hampshire, to the plaintiff, conditioned to save the plaintiff harmless from sundry liabilities incurred by him on account of T. Morse, and also to save one Robert Morse harmless from his liability upon a note to Joseph Bell, which was signed by said Timothy and Robert Morse,

and which was the proper debt of T. Morse. The mortgage was made in New-Hampshire, and the mortgagee was a citizen of New-Hampshire. On the same day, in Vermont, said T. Morse made a deed of assignment of all his property in Vermont to citizens of that State, giving preferences among his creditors there. On the 27th of June, 1843, one Horace Morse, as the agent of T. Morse, for the purpose of giving the plaintiff possession of the boards, went with the plaintiff to Whitman's mill and yard, and then pointed out to him the boards and other lumber there, and told him that he put him in possession of the lumber and boards there at the mill and yards. At the same time the plaintiff told Whitman, who owned the mill, that he would pay him for the use of the mill from June 27, 1843, and he did so. Dutton's landing was about three fourths of a mile from the mill, and was a public landing place, where all persons who desired were accustomed to lay lumber, paying to the owner for the use made of it. On June 27, 1843, said Horace Morse, after having been at the mill, went with the plaintiff also to Dutton's landing, for the purpose of giving him possession of the boards that were at that place, and there pointed out to him the boards, and told him that he put him in possession of them under the mortgage. The plaintiff then went to the house of Dutton, who resided near the landing, and requested him to take charge of the boards there for him, who, it was agreed for the purposes of this trial, refused to take charge of them. The plaintiff told Dutton that he would pay him for the use of the landing from that time till the boards should be taken away. It was then evening, and the plaintiff returned to his dwelling-house, a distance of about two miles from the landing. T. Morse took no charge of the boards after the delivery of them to the plaintiff, above stated. It appeared that T. Morse, at the date of the mortgage to the plaintiff, was deeply insolvent. On the morning of June 28, 1843,

Nancy Swasey, one of the defendants, having a just debt against said T. Morse, caused the property in question to be attached. Powers, the other defendant, as deputy-sheriff, made the attachment. Judgment was rendered September term, 1843, and the property sold upon the execution in due form by Powers, October 11, 1843.

The court ruled that the foregoing facts constituted a sufficient delivery to, and retaining of the possession of the boards by the mortgagee, to render the mortgage valid and operative, without a record of it, within the intent of the provisions of the act regulating the transfer of personal property by mortgage, requiring such possession by the mortgagee.

It was contended at the trial, on the part of the defendants, that if the general assignment of the property in Vermont, and the mortgage of the property in New-Hampshire, under which the plaintiff claims, were each made as a part of a plan to prefer certain creditors, they are to be regarded as parts of the same instrument, and that, in legal consideration, they would constitute a general assignment, and that the mortgage as a part of the assignment would be void, as operating to give a preference to the mortgagees. The court ruled that the instruments being made between different parties, and to operate in different governments, and the subject matter of each being different, could not in law be regarded as one instrument, and that the mere fact that the assignment in Vermont and mortgage in New-Hampshire might operate to convey all the debtor's property, and might be designed to have, and might in fact have, the effect to prefer certain creditors of T. Morse, would not render the mortgage void. The court further ruled, that a mortgage in New-Hampshire is not void, even though it may be designed to convey, and even may purport to be a conveyance of all the property of a debtor to one or more of his creditors, thereby preferring them.

The note to Joseph Bell, described in the mortgage, was permitted by the court to be given in evidence to the jury, as tending to rebut any inference of fraud from inadequacy of consideration which might be drawn from its non-production, notwithstanding the parties to the mortgage had made oath that it was made to secure the plaintiff against his liabilities, in the manner appearing upon the mortgage; for which reason the defendants objected to its admissibility in evidence.

In order to show that the debt to Bell was amply secured prior to the date of the mortgage, and to make an inference of fraud from that fact as touching the mortgage, the defendants gave in evidence the books of record of the proprietors of the Haverhill Bridge Corporation, by which it appeared that on October 10, 1837, Joseph Bell took a certificate of transfer of thirty shares in said corporation. The certificate purported to be upon a sale of them by Morse to Bell. It was contended by the defendants, that notwithstanding the conveyance was in form an absolute sale, it was in fact a mere security, and was so intended by the parties. For this purpose the defendants offered to show that in 1837, and 1838, after the sale, the dividends on those shares were paid to T. Morse; that at the annual meetings holden January 1, 1839,–40,–41,–42,–43 and 44, T. Morse was elected one of the directors of the corporation; that in 1839, and 1840, Joseph Bell was clerk, and as clerk recorded the fact of the election of T. Morse; that several times objection was made as to his eligibility, based upon the provisions of the by-laws of the corporation, that all officers of the corporation should cease to be such on ceasing to be stockholders, and that, on such occasions, he claimed to be eligible, by reason of the fact, as he alleged, that the transfer was by way of security only, and that Bell and T. Morse, being present at a meeting of the proprietors after the transfer, conversed together relative to the transfer, and represented that the

Morse *v.* Powers.

sale was only by way of security. The court rejected the evidence. To the foregoing rulings the defendants objected.

*Wilcox*, for the defendants. The statute requires possession to be taken. The object of this was to give notice. Now the delivery of possession in this case was merely constructive, — nothing indicated any change of ownership.

If the plaintiff took possession, he did not retain it; the property was not marked. Shall the creditor, who comes and finds every thing as it was, and attaches, suffer for others' negligence ?

Our statute makes void all general assignments. It is clear, if this transfer by mortgage had been included in the general assignment, it would have been void. It is of no consequence that it is done by different instruments. 11 Mass. 74; 9 Mass. 49; 15 Mass. 96; Com. on Con. 546; 13 Mass. 51; 22 Pick. 277. And these instruments were between the same parties — between a debtor and his creditor, — and cover all his property.

The declaration of Bell should have been admitted. Greenl. 121; 2 Cow. Phil. Ev. 596; 2 Caines 106, 107; 5 Har. & J. 51, 57; 4 Pick. 378, *Pool* v. *Bridges*.

*Perley*, on the same side, on the question of change of possession, cited *Clark* v. *Morse*, 10 N. H. Rep. 236; *Smith* v. *Moore*, 11 N. H. Rep. 65. In the case of an absolute sale, on a question of fraud, there may be explanations to rebut the *primâ facie* evidence of fraud; but in the case of a mortgage the question is whether possession has been taken and retained. If not, no explanation can be received. The statute is peremptory. If not done, the attaching creditor has preference. It is not enough that the party had the control. The mortgage gave him title, and complete control. Standing upon the landing, and declaring that he took possession, added nothing to it.

Something more must be meant by the statute. What was done upon the landing gave no notice, no publicity whatever, and had no tendency to do so. Possession of real estate has been held to supply record. As to personal property it is the same. But if the possession of real estate is not such as to indicate a change of title, it is not sufficient. *Bullock* v. *Williams*, 16 Pick. 35. The delivery was of no value as to the parties, for the title was complete before; nor as to the creditors, for it gave them no notice.

A mortgagee must take and retain the same possession as an attaching officer would. It was therefore insufficient. 14 Mass. 352, *Gale* v. *Ward;* 3 Shep. 303. As to Robert Morse's interest in the mortgage, see 10 N. H. Rep. 458, *Rundlett* v. *Dole.*

*Hibbard,* for the plaintiff, as to the effect of the possession taken, cited *Smith* v. *Moore,* 11 N. H. Rep. 65; 19 Pick. 1, *Parker* v. *Willard;* 1 Kinne Comp. 168–170, 226; 2 Stark. 1641; 2 Kent Com. 500, 502; Story on Conf., sec. 513.

The property was of a heavy, bulky nature. Kent Com. 500. The delivery of timber must be according to the nature of the thing. It is unnecessary to put a man to sleep with the boards, or stay there all night. This was at or near night. There was no laches. The plaintiff might well let it remain until morning. 17 Mass. 204, *Rice* v. *Dustin;* 1 East 192; 2 Stark. 891; 12 Mass. 302, *Jewett* v. *Warren;* 14 Mass. 400, *Beaumont* v. *Cram.* An absolute vendee is not required to do what an officer must do to keep possession. The officer has no title, mortgage or transfer; he has by his acts to make and perfect his title. As to the rights of an attaching creditor, see 17 Mass. 115, 116; 5 N. H. Rep. 570, *Ricker* v. *Cross;* 2 Stark. 1641; 19 Pick. 1, *Carter* v. *Willard;* do. 202.

In relation to the assignment as affecting the mortgage; these instruments were made to operate in different juris-

dictions. The assignment was good in Vermont — the mortgage was good in New-Hampshire. It does not appear that they were made at the same time, but only about the same time. Another good instrument in Vermont cannot invalidate this good instrument here.

*Quincy*, on the same side, as to the sufficiency of the delivery, cited 2 Camp. 243; 3 Caines 182; 5 Johns. 335; 1 Pick. 389; 2 Pick. 607; 17 Me. 162; 12 Vt. 513; 13 Vt. 416. The great question is respecting the assignment in Vermont, whether this mortgage can be construed as part of the assignment in Vermont. In order to connect different instruments together, as different parts of the whole, the rule is that they must be between the same parties, in the same subject matter, to effect the same object. 8 Mass. 159; 7 Mass. 499; 13 Mass. 51; 22 Pick. 277. The assignment embraced his property in Vermont only. It was not to accomplish the same object. There is nothing in the mortgage that refers to the assignment. The assignment law of New-Hampshire cannot affect the case, for this was only intended as a security between the parties mentioned in the mortgage.

A party has a right to prefer creditors. 5 Met. 144; 16 Pick. 281; 23 Pick. 446.

PARKER, C. J. The evidence shows that the plaintiff took possession of the property in question under the mortgage, and that he retained that possession within the meaning of the statute. There should be a change of the possession, as stated in *Smith* v. *Moore*, 11 N. H. Rep. 55. But what is necessary to constitute a change of possession must depend upon the particular situation of the property. 10 N. H. Rep. 236, *Clark* v. *Morse.* Upon a sale of articles which are at the time in the house of the vendor, they should be removed, or a control over them be kept in some way. So, perhaps, where they are on the land of the vendor, for that is his possession. But if they are

in the house of a third person, a delivery to the owner of the house to hold, as the agent of the vendee, might be a substantial change, so that it would not be necessary to remove them in order to take and continue the possession. The vendee would have possession by his agent, and this would seem to be a change of the possession within the rule. There may be a change of possession without a change of locality. If property, which is not within the actual possession of the owner, be sold and delivered to the vendee, leaving it in the place where it was situated is not leaving it in the possession of the vendor, and creditors should not be misled because it remains in the same locality. The very fact that the property is not in the possession of the debtor leads to the inquiry how it is held, and who is the owner; and the fact that the debtor was the owner, and left it at the place where it is found, leads to no legitimate inference that it continues to be his property, when he has not the possession and exercises no acts of ownership over it. To presume, without inquiry, that it remains his, is an unwarrantable presumption. Suppose the owner of property permits it to go into the possession of another person, who is a bailee for hire, or a depositary, and the bailee subsequently purchases it fairly, paying a full consideration. The ordinary if not necessary operation of such a transaction is to leave the article in the possession of the purchaser. The very nature of the transaction would leave the property in the same situation in which it was previous to the sale; and the parties to the sale are not required to do an unnatural act in order to perfect the sale as against creditors. To make a change of the actual possession would put the property out of the possession of the vendee. Cases of such a character are not those where a false credit arises from the possession, and the creditors are not authorized to infer that the property continues to belong to the debtor because it was his when the bailment commenced. In

Morse *v.* Powers.

this respect it differs materially from a sale where the property is in the actual possession of the vendor, and where the natural course of a *bonâ fide* sale is to cause a change to the possession of the vendee.

In the present case the manual possession was not in the mortgagor nor in the mortagee, at the time when the attachment was made; but the legal possession was in the mortgagee. The property was partly on a public landing. This was in the possession of the mortgagee after the delivery to him. So of that part which was at Whitman's mill-yard. If Whitman be regarded as having the actual possession, he had it for the party having the right of possession. The mortgagee took actual possession, and that possession was not relinquished, nor the prior possession restored, by leaving the property where it was at the time of the delivery.

There is another view of this case. When the delivery of the lumber at the mill was completed, the plaintiff told the owner of the mill that he would pay for the use of the mill from that time. When that at the landing was delivered, he told the owner of the landing that he would pay him for the occupation of that. If it was necessary for him to do more in order to sustain his mortgage title, what was he required to do ? It was evening. He could not be required to remove the lumber during the night, nor to keep personal watch and ward over it until morning, travelling from hour to hour between the landing and the mill-yard. And we are of opinion that he was not bound to keep agents at the different points during the night for that purpose. He might well go home and take measures for the removal of the property in the morning. This would not be a relinquishment of the possession, nor negligence. There is a sufficient explanation why a removal did not take place, if a removal were required, especially as the property was not left in the hands of the mortgagor.

We are of opinion that this would be sufficient in the case of an absolute sale, where the goods were at the time in the possession of the vendor. In such case there must be sufficient explanation, if the possession is not changed. 3 N. H. Rep. 415, *Coburn* v. *Pickering.* But it is a sufficient explanation that the property is left until the vendee can procure the necessary means of removal. He could not be required to go to the house of the debtor, prepared with carts, in anticipation of a purchase; nor to remove at midnight, in order to manifest the *bonâ fide* character of a purchase which he had completed.

The assignment in Vermont appears to have been a valid instrument according to the laws in existence there. The mortgage is valid by the laws of this State, where it was executed. The two instruments cannot be construed together, as parts of the same transaction, so as to avoid the mortgage, upon the ground that the assignment is fraudulent as to creditors, and that the whole is, therefore, vicious. The assignment would have been invalid, if made here, to operate on property here, because it contains preferences not allowed by our statute. But it was not made here, and it cannot be rendered invalid by any constructive tacking of it to the mortgage. If that is good, and must remain so, because made in Vermont, it is not readily perceived upon what principle the mortgage, which is otherwise good, is to be avoided by construing it as a part or another transaction which is also legal and valid. If an entire transaction consist of several parts, and one fails, the rest may fall with it; but the principle which governs such a case has no application in this.

The note to Bell was introduced to repel an inference of fraud, which might otherwise have been drawn from its non-production, and for that purpose it was admissible.

The evidence respecting the shares in [the bridge corporation was properly rejected. It was offered to show fraud in the mortgage. Supposing the declarations and

acts of Bell and Timothy Morse were competent material for evidence against those persons, to show that the transfer of the bridge shares was not absolute, but merely as a collateral security. It does not appear that the transfer had any connection with the note specified in the mortgage, or that the plaintiff had any concern with that transaction. Suppose the bridge shares were in fact transferred as collateral security for the note held by Bell, and that the transfer was invalid against creditors, because absolute on its face, when in truth it was conditional. The fact that creditors might avoid that security would serve to show that the debt was not amply secured by that transfer, and would certainly furnish no reason why the maker of the note thus intended to be secured might not secure the surety who, by reason of the invalidity of that security, was the more exposed to loss, and of course in greater need of indemnity.

The objection that the mortgage is invalid because it is partly in trust for the benefit of Robert Morse, and thus itself in the nature of an assignment, cannot be sustained. It is not essential to the validity of a mortgage that it should be wholly for the benefit of the mortgagee, nor will a trust for the benefit of a third person, of itself, give it the character of an assignment, within the act requiring assignments to comprehend all the property of the debtor, and to be without preferences.

The objection arising from the oath of the parties to the mortgage, indorsed upon it in pursuance of the statute, seem not to have been that the mortgage itself is invalid, because the proper oath was not taken, but that the note to Bell could not be introduced in evidence, because the security of that was not comprehended in the oath which was taken; but there is nothing inserted or omitted in the oath which can estop the plaintiff from showing that the mortgage was not fraudulent, or rebutting a possible

inference of fraud ; and that, we have seen, was the object of introducing the note which furnished the foundation of this objection.

*Judgment for the plaintiff.*