## Johnson v. Elliot.

The assignee of a mortgager cannot maintain an action against the assignee of the mortgagee, unless the condition of the mortgage has been performed, or the mortgage has been discharged according to its terms, or the provisions of the statutes.

An agreement between the mortgagee and mortgager, that the latter shall release his interest in the premises, and the mortgagee shall give up to him his notes and mortgage, though carried into effect, will not affect the rights of an assignee of the equity of redemption. As to him, the mortgage will be held to continue in force.

If a contract between one of the parties to the suit and a third person is material to the right of action, what was said by those persons at the time relative to the contract, is admissible as part of the res gestæ.

WRIT OF ENTRY for a tract of land in Bath. Plea, *null disseizin.* Both parties claimed title under Luther Butler, who owned the land on the 14th of April, 1847.

The demandant introduced the deed of David Young, jr. to himself, dated May 1, 1847, duly acknowledged and recorded, conveying the premises in fee simple, with warranty, and reciting that the land was the same that L. Butler had conveyed to Young by deed, dated April 14, 1847.

On notice from the plaintiff, the defendant produced an unrecorded deed from L. Butler to D. Young, jr., dated April 14, 1847, purporting to convey the premises to Young, in fee simple, and introduced this deed as part of his case, and also gave evidence tending to show that the deed was delivered to Young on the day of its date.

The defendant introduced a warrantee deed of the premises from L. Butler to himself, dated November 18, 1848, delivered and acknowledged the same day, recorded April 17, 1850, conveying the premises to the defendant with warranty, which deed was given for the consideration of $300.

It appeared in the course of the plaintiff's evidence that previous to the 14th of April, 1847, Butler had made a bargain with Young to sell him the premises for $300, $50 to be paid down, and the residue by instalments, to be secured by notes of Young, and a mortgage back, of the premises, to Butler; that at the time when the deed of Butler to Young was made out, a mortgage deed was made by Young to Butler, to secure the whole $300, in five notes of Young to Butler; that no money was then paid, but instead of the $50 agreed to be paid down, one of these notes for $50 was to be paid on the 1st day of May following; that these notes and the mortgage were then put into the hands of Butler; and Young, by agreement with Butler, went into immediate possession of the premises, and retained possession until the 18th of November, 1848; that Butler's deed to Young, of April 14, 1847, was on the day of its date left by Young in the hands of Butler, for some purpose, and remained in his hands, unrecorded, until Butler made his deed, of November 18, 1848, to the defendant. Whether this deed of Butler to Young was ever delivered so as to vest the title in Young, was matter of controversy on the evidence.

There was evidence tending to show that in the negotiation which preceded the making of Butler's deed to Young, Young told Butler he expected to get the $50 he was to

pay down, of Johnson; that in May, 1847, Young paid Butler $40 of the $50 which he was to pay on the 1st of that month, and then told Butler he had the $40 of Johnson, and had conveyed him the land.

It appeared that Young obtained of the plaintiff the $40, paid in May to Butler, and gave the plaintiff his note for it, payable in one year, with interest, and also at the same time gave the plaintiff the deed of the premises, dated May 1, 1847, and took back from the plaintiff a written agreement to re-convey the land to Young, when he should pay to the plaintiff the $40 note; that Young retained this writing until September, 1849, when Johnson gave up his note to Young, and Young gave back the written agreement; and it was agreed, verbally, that Johnson should relinquish his claim for the $40, and Young his claim to a reconveyance, and Johnson should make what he could out of the land.

There was no evidence that the defendant, before or at the time of his purchase, had any actual notice of Young's conveyance to the plaintiff, nor was there any evidence that Butler had notice of that conveyance, when he took back his deed from Young, except the evidence which is reported in the case; nor any evidence that Butler or the defendant, at that time, had notice of the writing given by the plaintiff to Young.

It appeared that the defendant, then residing in Vermont, some time previous to Butler's conveyance to him, applied to Butler to purchase the premises; that Butler, then having in his hands his deed of April 14th, 1847, to Young, and Young's notes and mortgage, told the defendant that he had made out a deed of the premises to Young; that Young was to pay $50 before the deed was to be delivered; that the deed had never been recorded or delivered, and would not be till Young paid $10 more to make up the $50; that he could turn Young out at any time. To the evidence of

these statements of Butler to the defendant, the plaintiff objected.

Mr. Patterson had made out the papers for Butler and Young, on the 14th of April, 1847, and previous to the 18th of November, 1848, it was agreed between Butler and the defendant that Butler should sell the defendant the premises for $300.

On the 18th of November, 1848, the defendant, Butler and Young met at Patterson's office, and in order to carry into effect the bargain of Butler and the defendant, it was there agreed by and between Butler, Young and the defendant, that Butler should pay Young a small sum of money; that the arrangment made on the 14th of April, 1847, should be given up; that Butler should keep his deed to Young, and give up to Young his notes and mortgage, and Butler should convey the premises to the defendant, according to the previous bargain. When this arrangement was stated to Mr. Patterson, he told Butler, in the presence of the defendant, that he, Butler, had better take a quitclaim deed from Young; Butler said it was unnecessary, as his deed to Young had not been recorded. Mr. Patterson then said the existence of the deed could be proved, and on this recommendation and statement of Mr. Patterson, the quitclaim deed of Young to Butler, dated November 18, 1848, was made out and delivered; the conveyance made by Butler to the defendant, and the papers made April 14th, 1847, given up as had been arranged. The notes and mortgage of Young to Butler were then given up to Young, according to this arrangement.

Young, during all this time, has been and still is in embarrassed circumstances and without property.

Young, being offered as a witness by the plaintiff, was objected to by the defendant, on the ground that he was interested, by virtue of the covenant in his deed to Johnson, against all claims by, from or under him. The plaintiff executed and delivered to Young a release of the warranty in

the deed, and all claim for the $40. The defendant object-
ed that Young was still interested, on account of his claim
for his conveyance of the land under the writing given to
him by the plaintiff. Young then gave the plaintiff a re-
lease of all claim for the land, and was admitted to testify.

A verdict was directed for the defendant, subject to the
opinion of the court on the foregoing case.

*Hibbard & Bedel*, for the plaintiff.

*I. & S. H. Goodall*, for the defendant.

BELL, J. Upon the face of this case the plaintiff claims
a tract of land worth $300, not because he has bought it
and paid the value of it to the former owner, but because
he advanced to Young $40 to enable him to make the first
payment for the property, and to secure himself took a deed
from Young of the equity of redemption of the property, then
subject to a mortgage for $260, and gave Young a written
agreement to re-convey the property upon being repaid his
money; and he now contends that the mortgagee, Butler, and
the defendant have dealt with the property so injudiciously
and unfortunately that, by virtue of certain very nice legal
and technical principles, they have lost all their right to the
property as against him. His equitable interest is equal, at
most, to $40, the defendant's just interest to at least $260;
and yet he claims to have the whole. If such a claim is sup-
ported by the law, it must be allowed; but courts cannot
avoid feeling some reluctance to sanction even a legal claim
which is at variance with the manifest justice of the case.

We may, in the first instance, look at the title of the par-
ties interested on the 18th of November, 1848. It would
seem that Butler, the original owner, supposed he had the
entire title to the property, though he had made a deed
to Young, and Young had paid him $40, part of the first
payment, and made his notes and mortgage for $250, be-

cause, as he supposed and now contends, he had never delivered his deed to Young. But taking the plaintiff's view as to this point, and assuming that Butler's deed to Young was delivered, then Butler had a mortgage to secure $250, and Young had the equity of redemption of that mortgage, and this equity he had conveyed to Johnson, the plaintiff, upon his written agreement to re-convey the property, when Young should repay him the sum of $40 he had advanced. The case does not find that the mortgage, made by Young to Butler, was ever recorded, neither does it find any direct evidence of notice to Johnson that there was such a mortgage; but we think the circumstances appearing in the case are such that no jury could hesitate to believe that Johnson, from the first, was well aware of that mortgage.

In this state of facts, *Elliot,* the defendant, proposed to buy the land of Butler for $300, and Butler agreed to sell. Young was present when the conveyance to Elliot was to be made, being embarrassed and unable to complete his bargain. It was then agreed that Young should release his right to the property, and Butler should give up to Young his notes and mortgage, and these things being done, Butler conveyed the property to Elliot. At the close of these transfers the title stood thus: Elliot had all the right which Butler had the power to convey, and Johnson, whose interest could neither be destroyed nor diminished by any acts of others to which he was not a party, had the right to redeem the property, upon the payment of $250. As to him, the mortgage remained in full force, and his right to have the property by payment of the debt, entirely unimpaired by the conveyances made to other parties. He could not be injured by their arrangements, but the plaintiff contends that he might be, and has been benefitted by the discharge of the mortgage, which leaves the property in his hands unincumbered by any debt. It then becomes material to inquire whether the mortgage was extinguished by the transactions of November 18, 1848.

Johnson v. Elliot.

A real action can be supported only by the tenant of a freehold estate, and against one whom the demandant is entitled to regard as claiming to be also a tenant of the freehold. No such action can be supported by one whose interest is merely equitable. The right of the plaintiff to recover in this case depends upon the question whether the mortgage of Young to Butler is extinguished, since upon that depends the question whether his estate is merely an equity of redemption, or is to be regarded as the legal estate. Nothing can be clearer than that a mortgager, or his assignee, of a subsisting mortgage, cannot maintain a real action against the mortgagee or his assignee. As between them the mortgagee has the legal title, and he cannot be turned out of possession by one whose title is merely equitable. *Raymond* v. *Holden*, 2 Cush. 264; 8 Johns. 488.

At common law, a condition subsists till it is either performed or released, or has become impracticable; and an estate which has continuance till such condition is accomplished, must continue until one or other of these alternatives occurs. Such is a mortgage; it passes from the grantor to the mortgagee the legal estate, and that estate, once created, continues. until the debt is paid, or its payment is released. Here the debt has not been paid nor released, and though the party has no longer the power of enforcing payment, from having given up his notes and deed, still, at common law, the estate continues, and is an answer to an action brought by one who has not a legal estate. Stearns, R. A. 191; *Hill* v. *Payson*, 3 Mass. Rep. 559; *Perkins* v. *Pitts*, 11 Mass. Rep. 134; *Parsons* v. *Wells*, 17 Mass. Rep. 428; *Bigelow* v. *Wilson*, 1 Pick. 485; *Sherman* v. *Abbott*, 18 Pick. 448.

By our statute, (Rev. Stat. ch. 131, § 4,) upon the performance of the acts stated in the condition of any mortgage, and the payment of all damages, &c., such mortgage shall be void. But the condition of this mortgage has not been performed, and the mortgage is not, therefore, void;

but at law the legal estate continues in the mortgagee, and the mortgager must seek his relief in equity, if this estate is set up as a bar to his recovery in a legal action.

It is well settled in this State that payment of a debt by a third person having an interest to protect, may operate as an assignment, even if the mortgage be formally discharged. *Robinson* v. *Leavitt,* 7 N. H. Rep. 99. And an assignment in form may operate to pass the legal estate, or as a discharge of the mortgage, according to the justice of the case, and the just intent of the parties. *Rigney* v. *Lovejoy,* 13 N. H. Rep. 247. Upon this principle the acts of the parties, in relation to the mortgage of Young to Butler, do not necessarily either extinguish or defeat the mortgage for all purposes nor as to all persons; but the mortgage will be considered as still subsisting for the protection of the rights of such persons as may in justice be entitled to the benefit of it. This case seems to present an instance where this principle should be applied. The defendant was a *bona fide* purchaser, for a valuable and adequate consideration, of the mortgaged property, without notice of any claim existing in the plaintiff. The notes and mortgage were given up to Young, and Young quitclaimed all his interest in the property, as would be natural and proper, if the parties supposed themselves to be the only persons interested. Their interest and the justice of the case, as between them and the plaintiff, required that the mortgage of Young to Butler should be assigned by Butler to Elliot, and in that case the sale of the property could have produced no change in the plaintiff's relations to the property. It is easy to see how the mistake in adopting this course, as to the mortgage, occurred. Butler considered that his deed to Young had never been delivered, and of course Young had never had any title which he could convey, and Elliot had never heard of any deed from Young to Johnson. We can hardly imagine a case where, for the protection of an innocent purchaser, it could become more necessary than in this case to

regard the mortgage of Young to Butler as still subsisting, and the whole transaction to be, in substance, an assignment of the mortgage title, at least so far as Johnson is concerned. Johnson cannot rightfully complain of this rule of judging, as he would, notwithstanding anything done by the other parties, still hold all the rights to the property he had ever acquired, and his security for the money he had advanced would have continued in full force. Upon this view the case is quite plain. Elliot stands as assignee of Butler of Young's mortgage, and Johnson as assignee of the equity of redemption of the mortgager. Johnson has a right to pay the mortgage debt, and then would have a right to maintain a real action, if the possession was not given up to him. But he can succeed in no action at law so long as the mortgage is regarded as in force.

It is not necessary to consider the effect of the transactions between Young and Johnson, since the result of the case does not depend on them. By our statute (Rev. Stat. ch. 131, § 2,) the deed of Young to Johnson, and Johnson's written agreement to re-convey, on repayment of the money he had advanced, which elsewhere would in equity constitute a mortgage, are not to be so considered. The deed is absolute, and the contract to re-convey is not a defeasance.

As against the creditors of Young such a conveyance and contract would be deemed fraudulent, as being a conveyance with a secret trust to the grantor; but the defendant here is not a creditor of Young, nor a purchaser for an adequate consideration from him, and not entitled to take advantage of this defect. The subsequent arrangements between Young and Johnson, as to the surrender of Young's note, and Johnson's agreement to re-convey, and the releases executed between them at the trial, seem to us also without importance in this case, inasmuch as they leave the interest of Johnson in the land unaffected. They relate merely to the covenants of the conveyance, and the contract to re-convey.

The objection made to the evidence of what was said by Butler to Elliot cannot prevail.   The bargain made between them was a material fact to be proved.   It was an important fact to both parties.   The talk of the parties at the time, relating to the subject of that bargain, necessarily threw light upon their contract, and was admissible as part of the *res gestæ*, precisely as what was said between Johnson and Young, relating to their bargain, would have been admitted.

*Judgment on the verdict.*