## HASTINGS & ux. v. STEVENS.

A widow is entitled to dower in an equity of redemption, against all persons except the mortgagee and persons claiming under him.

As against the mortgagee, she cannot be endowed, except upon payment of the mortgage.

As against one having an interest to redeem an estate mortgaged, who in fact redeems, she will not be entitled to dower, excepting upon contribution of a fair proportion of the incumbrance, according to the value of her dower interest.

But if an administrator, with the assets of the estate, pay off and discharge the mortgage, the widow will be let in upon her dower, without redemption or contribution.

Where an administrator sold an estate at auction, which was at the time mortgaged, and conveyed it with a covenant of warranty against all claims, by, from or under the intestate or himself, "but against no other persons;" and afterwards paid the amount due to the mortgagee, and the mortgagee executed a receipt upon the mortgage for the amount due upon it, "in full discharge thereof," it was *held*, that the payment operated as a discharge of the mortgage, and let the widow in to her dower.

It was *held*, also, that a declaration, publicly made at the sale to the tenant and other bidders by the administrator, that he had paid a part of the debt to the mortgagee, and that he would "pay," or "lift," or "raise," the mortgage for the benefit of the purchaser, could not alter the result.

ACTION OF DOWER, to recover dower in certain lands in Colebrook, in this county, and to recover damages for the detention thereof by the tenant. The writ was dated the 9th day of October, A. D. 1851. The tenant pleaded that

Jonas Mills, the late husband of the said Myra C., neither on the day on which the said Myra espoused him, nor before, nor ever afterwards, was seized of the tenements aforesaid, with the appurtenances, of such estate as that the said Myra could be thereof endowed.

It was proved that on the 30th day of September, A. D., 1833, one William Cole, and Nancy, his wife, together with one Alvan Huntington, conveyed to said Jonas Mills the premises in which dower is demanded in this action; and that the said Jonas Mills, on the same day, and to secure the purchase money, re-conveyed the said premises to the said Cole and Huntington, in mortgage, conditioned to pay two notes of even date, for eleven hundred and fifty dollars each, with interest, said Myra C. then being the wife of said Mills, but now the wife of said Hastings. Said Jonas Mills died on the 26th day of January, A. D. 1835; Spencer Clark was appointed his administrator, and said estate was settled in the insolvent course, and was in fact insolvent. Said Cole and Huntington presented said notes to the commissioner on said estate, and the same were duly allowed at $2,466,74, including interest to the close of the commission being the 17th day of August, A. D. 1835. The report of the commissioner was duly accepted on the 19th of November of the same year. In March, A. D. 1836, the administrator obtained a license to sell all the real estate of the said Jonas Mills, for the payment of debts against said estate, and on the 4th day of October, A. D. 1836, duly sold at public auction the premises described in said plaintiff's declaration, to the tenant, for the sum of twenty-five hundred dollars, and on the 8th day of the same October duly executed and delivered to him a deed of said premises. In and by said deed said Clark covenanted as follows: " To have and to hold the said parcels of land, with the privileges and appurtenances thereof, to the said John Stevens, his heirs and assigns to his and their use and behoof forever. And I, the said Spencer Clark, do covenant with the

said John Stevens, his heirs and assigns, that I am duly empowered to convey the same to the said John Stevens as aforesaid, that I have in all things observed the rules and directions of the law in the said sale, and that I will, and my heirs, executors and administrators, shall warrant and defend the same unto the said John Stevens, his heirs and assigns, against all persons claiming the same by, from or under the said Jonas Mills, or me, the said Spencer Clark, but against no other persons." It further appeared that said administrator, on the 7th day of September, A. D. 1839, rendered his first account to the probate court, whereupon a dividend was ordered, which amounted to ninety-seven cents on the dollar, as the claims were allowed, including interest, to the close of the commission, upon all the claims, with the exception of the claim of Cole and Huntington, which had been paid in full, and also some preferred debts and charges. And on the 7th day of December, A. D. 1846, said administrator rendered his second account to said probate court, and it was further ordered that he pay to the same creditors, mentioned in said former decree, the further sum of eleven cents and seven mills on the dollar. The said mortgage from Jonas Mills to Cole and Huntington was offered in evidence, on the back of which was the following indorsement:

" Received of Spencer Clark, administrator of the goods and estate of Jonas Mills, late of Colebrook, New Hampshire, deceased, twenty-six hundred dollars, in full for the amount of the within mortgage, and I do hereby discharge the same.

WILLIAM COLE.

Dated at Lebanon, April 7th, A. D. 1837."

It also appeared that all the assets of the estate, including the proceedings of said lands, have been fully administered, and there yet remains due and unpaid upon the claims allowed by the commissioner, with the exceptions

named, about ten per cent., reckoning interest to the present time. An allowance was made to said Myra C., by the judge of probate, of $600, for her present support, and she has not contributed any thing towards the mortgage, except as said payment by the administrator may be considered as made on her account. The tenant proved that the administrator, at the time he exposed the premises for sale, publicly declared to the tenant and other bidders, that he had paid a part of the debt to Caleb Huntington, and that he would " lift " the mortgage for the benefit of the purchaser. The witness could not tell whether the word used was " pay," " lift," or " raise," but it was one of them.

A verdict was directed for the demandant, subject to the opinion of this court. The sum claimed in the writ as damages for the detention of the dower after demand, was, by consent, returned as damages, which is to be reduced to such sum as shall be found by an auditor, if the ruling of the court below be sustained.

It was ordered that the questions arising upon the foregoing case should be transferred to this court for decision.

*Burns & Fletcher*, for the defendants.

The only question in this case is, whether or not Jonas Mills was ever seized of such an estate in the premises as entitles his widow to dower therein.

The case finds that on the 30th day of September, 1833, these premises were conveyed by Cole and wife and Huntington to Mills, and by deed bearing even date with this conveyance, mortgaged back to the grantors for security of the purchase money; that Mills died on the 26th of January, 1835, leaving the mortgage undischarged, having had in his lifetime merely an instantaneous seizin, and not such a seizin as entitles his widow to dower. *Ballard* v. *Bowers*, 10 N. H. Rep. 500; *Moore* v. *Esty*, 5 N. H. Rep. 479.

On the death of Mills, Spencer Clark was appointed ad-

ministrator of said Mills' estate, who, in March, 1836, obtained license to sell all the real estate belonging thereto, for payment of debts, and, pursuant to said license sold, on the 4th day of October, 1836, the premises in question to John Stevens, this tenant, for $2,500, that sum being very nearly the amount secured by the mortgage on the premises.

The administrator, agreeing at the time of the sale, that the mortgage should be discharged, conveyed the premises by deed, with covenant of warranty as against all persons claiming by, from or under said Jonas Mills or said Spencer Clark. All the estate which was ever in Mills, or his personal representatives, which was, in fact, a mere equity of redemption, was conveyed by this deed to Stevens, and entirely divested from the estate of Mills. *Whiting* v. *Whiting*, 4 Conn. 181, and cases cited in note to the same.

The administrator, by his agreement that the mortgage should be discharged, and in order to make good the covenants of his deed, became a trustee of Stevens, to apply the money paid by Stevens and procure the discharge of the mortgage.

Afterwards, on the 7th of April, 1837, the administrator, so acting, paid the amount secured by the mortgage, and procured the same to be discharged. This discharge, the defendant contends, enured to his benefit, and was an equitable transfer of the mortgage to him, effectuated by the payment by said Stevens of the debt secured by the mortgage.

In *Regney* v. *Lovejoy*, the court say: " Payment of the debt by a third person, having an interest to protect, may operate as an assignment, even if the mortgage be formally discharged." See *Robinson* v. *Leavitt*, 7 N. H. Rep. 99, 101, 112. *Richardson*, C. J., says: " It makes no difference whether the party, on the payment of the money, took an assignment of the mortgage or a release, or whether a discharge of the debt and mortgage was made, and the evidence of the debt cancelled. I am, on the whole, of opin-

ion that it is now the settled rule of law as well as equity, that a mortgage is never to be considered as discharged, so long as it is necessary to consider it otherwise, in order to give those who have the estate of the mortgagee, the full enjoyment of that estate;" and this doctrine was fully sustained in the case of *Heath* v. *West*, 8 Foster's Rep. 101.

The plaintiffs, in this case, have no equity to sustain their claim. The estate was actually insolvent, yet the widow had the liberal allowance of $600, "and the law may well presume that this sum was a payment to the full extent of any interest she could have had in the estate." And as the purchaser paid the full value of the premises, he must manifestly be a great sufferer, if the plaintiff's claim should prevail." *Gibson* v. *Crehore*, 3 Pick. 480.

*H. & G. A. Bingham*, (with whom was *Cooper*,) for the plaintiffs.

This is a writ of dower. The only question raised by the plea is, was Jonas Mills so seized of the premises in his lifetime as to entitle his wife to dower? The case as drawn, shows the following facts: that in 1833 the demandant's husband, Jonas Mills, bought the premises in question, and mortgaged the same back, to secure the purchase money to the amount of $2,300; that in January, 1835, Mills died, and an administrator was appointed on his estate, and he, out of the assets of the same, paid the mortgage.

It seems to be a well settled principle that if the husband is possessed of an equity of redemption, and the incumbrance is removed by himself, his widow, executor, administrator, or other person for him, the widow will be entitled to dower. *Hildreth* v. *Jones*, 13 Mass. Rep. 525; *Bullard* v. *Bowers*, 10 N. H. Rep. 500; *Rossiter* v. *Cossitt*, 15 N. H. Rep. 38.

The only defence made to the above position is, that the administrator, at the time he sold the premises at auction, said that he had already paid a part of the debt, and that

he would lift or pay the mortgage for the benefit of the purchaser.

Our answer to this position is,—1. This evidence is incompetent, and not entitled to consideration, as the defendant has no title to the premises but his deed from the administrator, and under that alone he holds ; and if that does not convey the widow's right of dower he cannot show it by parol, as parol evidence is not admissible to enlarge or diminish, or in any way change the estate conveyed as it appears from the deed. *Conner* v. *Coffin,* 2 Foster's Rep. 538.

2. If the evidence is considered it amounts to nothing, as when the mortgagee debt is once paid out of the assets of the estate, that is enough. The debt is extinguished, and the administrator, had he the inclination, would not be permitted, by law, to assign the mortgage, and deprive the widow of her dower. *Snow* v. *Stevens,* 15 Mass. Rep. 278 ; *Barker* v. *Parker,* 17 Mass. 564 ; *Button* v. *Bullard,* 13 Mass. Rep. 227 ; *Jennison* v. *Hapgood,* 14 Pick. 345 ; *Hobbs* v. *Harvey,* 4 Shep. 80.

3. The evidence, being considered, proves nothing inconsistent with the administrator's deed, as that conveys all that Jonas Mills could have conveyed after paying the mortgage, had he been living. The only legal construction that can be given to the evidence is, that the administrator told the bidders that he would pay the mortgage out of the assets of the estate, what was not already paid, and that they might bid as if the mortgage was then fully paid or had never existed. He did not intend, nor did either party understand, that they were transacting the business so as to deprive the widow of her legal right of dower.

The mortgage was discharged upon its back, as appears in the case, and was delivered to the administrator, and has always remained among the papers of the estate, which most clearly shows the intention of the parties, at the time,

to be an extinguishment of the mortgage and mortgage debt.

The widow's right of dower is a right favored in the law, and should be so construed as against those attempting to deprive her of the same. *Hildreth* v. *Jones* and *Barker* v. *Parker*, before cited.

*Burns & Fletcher*, in reply.

The administrator sold the estate under the agreement to pay the mortgage, and the defendant bought the entire estate and not the equity of redemption.

The administrator having sold the estate before he could give a title, he was bound to discharge the incumbrance; and the difference was all that could go into the assets of the estate. The case of *Church* v. *Savage*, 7 Cush. 440, is in point.

Again, where the legal title to real estate was vested as a security for the payment of the purchase money, and the equitable owner dead, his widow cannot have dower assigned to her without a discharge of the sum charged on the estate; and if the money be not paid, she is entitled to have the land sold for its payment, and to be endowed of one-third of the surplus. *Thompson* v. *Cochran*, 7 Humph. 72.

Woods, J. Mills, at his decease, was seized of an equity of redemption in the land in question.

It must now be regarded, after the numerous decisions determining the point, both in this State and elsewhere, that a widow is dowable, in such an estate, against all persons except the mortgagee and such as may claim under him. *Cass* v. *Martin*, 6 N. H. Rep. 25; *Rossiter* v. *Cossit*, 15 N. H. Rep. 38, and cases cited; *Barker* v. *Parker*, 17 Mass. Rep. 504; *Snow* v. *Stevens*, 15 Mass. Rep. 278; *Bolton* v. *Bullard*, 13 Mass. Rep. 227. And it is equally well settled that, as against the mortgagee, she cannot be endowed, except upon payment of the entire mortgage.

And if she would be endowed as against one who, having an interest to redeem, has, in fact, redeemed, she will not be entitled except by payment of a contribution of her fair proportion of the incumbrance. *Cass* v. *Martin,* 6 N. H. Rep. 25; *Robinson* v. *Leavitt,* 7 N. H. Rep. 104, and cases cited; *Rossiter* v. *Cossit,* before cited.

And it is also well settled, in this State, that where the widow is dowable only in an equity of redemption, if the administrator of the estate shall, with the assets arising out of the estate, pay off and discharge the mortgage incumbering it, it will operate to let in the widow upon her dower, without redemption or contribution on her part. *Bullard* v. *Bowers,* 10 N. H. Rep. 500; *Rossiter* v. *Cossit* and cases cited there. Do the facts in the present case show a payment and discharge of the mortgage to Cole and Huntington? In form, as shown by the receipt on the back of the mortgage, the transaction was a payment, by the administrator of Mills, the mortgager, to Huntington, one of the mortgagees, and the mortgage was discharged. A receipt to that effect was made and signed by the mortgagee upon the back of the mortgage. And, as we understand from the facts reported in the case, the full amount of the mortgage was, in fact, paid to the mortgagees from the avails of the sales made of the property of the deceased, and the assets generally in the hands of the administrator belonging to the estate. Besides, as tending to show that it was, doubtless, the purpose of the administrator to pay and cause the mortgage to be discharged, it may be observed that he assumed at the sale, and upon the face of the deed given to the tenant, to convey to him the estate, free from all claims of persons claiming from Mills or his administrator, and warranted the title against all such claims. And it is clear that the mortgage was a claim of the description contemplated by the terms of the warranty.

The administrator had no interest in the estate to be upheld or protected by continuing the mortgage in force. He,

at most, had the duty to perform, in his discretion, to sell the equity, or to pay off the incumbrance and redeem the estate, as might be most advantageous to those interested in it. Upon a full view of the case, he elected to sell the entire estate as if unincumbered, and to pay off the mortgage, and if it was not judicious, but was injurious to the interests of those concerned in the estate, either as heirs or creditors, he would himself be answerable, upon the settlement of his administrator's account, for the loss sustained by the course adopted in the management and disposition made of the estate. *Rossiter* v. *Cossit, ubi supra.*

It is contended, in the present case, that the declaration of the administrator, at the sale, that he had paid a part of the debt to Caleb Huntington, and that he would " pay," " lift," or " raise " the mortgage for the purchaser, in connection with the subsequent payment and discharge, constituted an equitable transfer of the mortgage to the tenant. It is true, that the form of the transaction is not material; the effect is to be construed according to the intention of the parties and the substantial justice of the case. Where the money is paid on a mortgage, by a party interested in the estate and entitled to redeem, it will operate as a discharge, or as an assignment of the mortgage, substituting him who pays in the place of the mortgagee, as may best promote the purposes of justice and the just interests of the parties. *Robinson* v. *Leavitt,* before cited.

But, we think, the declaration of the administrator, at the sale, cannot be construed as meaning more than that he would cause the mortgage to be paid off and discharged. He had already paid a part, and that he would pay the balance, was the effect of his engagement. He did not contract to purchase the mortgage, and transfer it to the tenant. That would not be a fair construction of his language. It was not in the line of his duty to do this; it was his duty to redeem from the mortgage or else to sell the equity. The former he elected to do, and must be understood to have

paid with a view to a proper discharge of his duty in this respect. Besides, he paid out of the assets belonging to the estate, and the estate itself having no interest, and the administrator in behalf it having no right to keep it on foot, the payment and discharge are not to have that effect. The claims secured by the mortgage were allowed against Mills' estate, and any arrangement made with the view of assigning the mortgage to the tenant, and having that effect, would simply change the creditor, and leave the indebtedness of the estate, after disposing of its funds, as before. The tenant would, in that case, become the holder of the mortgage, and, of course, of the mortgage debt, with the right to keep it on foot, and in force. Such could not be the intention of the administrator, who, of course, was credited with the amount, as paid in discharge of the mortgage, and, upon the settlement, debited with the amount of the assets which came to his hands, of which the amount realized upon the sale of the land in question constituted a part. The administrator could not properly act as the agent of the tenant in purchasing the mortgage with the funds of the estate, which he held as the agent of all interested, and assigning it to him. He held the funds for the payment and discharge of the just debts against the estate, in the first place, and any remainder that might be found, it was his duty to distribute to the heirs. He could not, with the funds of the estate, pay off a debt against the estate and then treat the debt as unpaid, and as subsisting in another as the creditor. No principle of law or equity, it is believed, would be found broad enough to embrace and justify such a proceeding. And we are not to infer that it was the fair intention and purpose of the administrator to enter into such an arrangement, by the language used at the sale. He was to " pay," " lift," or " raise " the mortgage for the benefit of the tenant. It was, then, plainly a payment that was intended ; and it was manifestly favorable to the interests of the defendant that a mortgage resting upon the estate should be paid or

lifted, and, consequently, discharged. On the whole, we are of the opinion that the ruling of the court below was correct, and that judgment should be rendered upon the verdict for the plaintiffs, and for such sum in damages as shall be found justly due by an auditor, according to the provisions of the case.

*Judgment for the plaintiff.*